The STATE of Ohio, Appellee,

v.

MARSH, Appellant.

[Cite as *State v. Marsh* (1990), 71 Ohio App.3d 64.]

Court of Appeals of Ohio,
Portage County.

No. 89-P-2143.

Decided Dec. 31, 1990.

*David Norris*, County Prosecutor, and *James Carnahan, Jr.*, Assistant County Prosecutor, for appellee.

*Lawrence R. Smith*, for appellant.

JOSEPH E. MAHONEY, Judge.

On Friday, May 26, 1989, appellant, Rusten Marsh, took his family to the Mogadore Reservoir campground for their traditional Memorial Day weekend camping trip/family reunion. Appellant's group occupied three contiguous campsites.

During the course of the evening, it became apparent that a group of campers across the road from appellant's group was becoming increasingly intoxicated. They were loud and using profane language. At approximately

1:43 a.m., appellant flagged down a sheriff's patrol car to request assistance in handling the situation. The deputy left but returned shortly thereafter with a park ranger to talk to the campers causing the disturbance. One of the campers, Paul Pannuto, became belligerent with the officers and was ordered to leave and not come back. Some of the people in Pannuto's group left the campsite while others, including Pannuto, hid in the woods to avoid leaving.

After the officers left the campsite, members of Pannuto's group again became boisterous. They were using profanity and directing threats at appellant and his family. They threatened to burn down appellant's tents with appellant and his family in them. Some members of appellant's group responded by running to their van in an attempt to escape. The van, however, would not start.

Appellant responded by exiting his tent, picking up his fishing knife which was lying on a picnic table, and walking behind his tent where the threats had come from. Appellant testified that the next thing he knew, he was punched in the face. He claims that something was flicked in his eyes, blinding him for an instant. He pushed out with his hands to try to fend away his attacker, and this person kept repeating, "I'll kill you, I'll kill you." Eventually, the police arrived on the scene and discovered the body of Paul Pannuto. He had been stabbed and was then transported to Akron General Medical Center. He died from the stab wound approximately twelve hours later.

Appellant was charged with felonious assault, resisting arrest and disorderly conduct. He was later indicted on one count of murder. A trial was held, beginning on October 17, 1989. Appellant was found guilty of the lesser included charge of manslaughter under R.C. 2903.03. On December 8, 1989, appellant was sentenced to seven to twenty-five years at the Ohio Department of Correction.

Appellant timely filed a notice of appeal with the following assignments of error:

"1.   The trial court erred by giving an incorrect jury instruction on the elements of self defense, specifically, 'duty to retreat,' as well as failing to instruct them [*sic*] that he was privileged to defend the members of his family.

"2.   The trial court erred by not permitting appellant to introduce character evidence of the victim: specifically the victims [*sic*] propensity for violence and drunkenness which went to an essential element of his claim of self-defense.

"3.   The trial court erred to the prejudice of the appellant by not declaring a mistrial due to the conduct of the prosecutor.

"4. The conviction for manslaughter is not supported by sufficient evidence."

In the first assignment of error, appellant contends that the trial court erred by giving an incorrect instruction to the jury. Although the jury was given a basic self-defense instruction, appellant argues that the jury should have been instructed on the privilege to defend members of one's family and on the "duty to retreat" element of self-defense.

Although appellant objected to the jury charge with respect to the lack of a discussion on the duty to retreat, no objection was raised regarding the lack of any language on the privilege to defend members of one's family and, therefore, appellant must now show that this amounted to plain error.

In Ohio, self-defense is an affirmative defense which the defendant has the burden of proving. *State v. Martin* (1986), 21 Ohio St.3d 91, 21 OBR 386, 488 N.E.2d 166, affirmed *Martin v. Ohio* (1987), 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267. In order for the defendant to establish self-defense, he must show:

" ' * * * (1) * * * [he] was not at fault in creating the situation giving rise to the affray; (2) * * * [he] has [*sic* ] a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of * * * force; and (3) * * * [he] must not have violated any duty to retreat or avoid the danger. * * * ' *State v. Robbins* (1979), 58 Ohio St.2d 74, 12 O.O.3d 84, 388 N.E.2d 755, * * *." *State v. Williford* (1990), 49 Ohio St.3d 247, 249, 551 N.E.2d 1279, 1280.

Ohio recognizes the privilege to defend the members of one's family. *Sharp v. State* (1850), 19 Ohio 379, 387; *Williford, supra,* 49 Ohio St.3d at 249, 551 N.E.2d at 1280. A person is entitled to use reasonably necessary force, even to the taking of life, to defend his family members if in good faith and upon reasonable ground he believes that a family member is in imminent danger of death or serious bodily harm. *Williford, supra,* at paragraph one of the syllabus, citing with approval *Sharp v. State, supra,* and *State v. Sheets* (1926), 115 Ohio St. 308, 152 N.E. 664.

In the present case, appellant testified that when the threats of tent burning and killing began, he was panic-stricken. He instructed his family to leave immediately. He stated that it sounded like the threats were coming from immediately behind his tent. Appellant was aware that two gallons of flammable Coleman fuel were right behind his tent and that a lit lantern was also nearby. He heard the sound of the engine in his van grinding but refusing to start, which was an indication that his family was unable to leave

the premises. He felt that his life and the lives of his family members were in jeopardy.

Under these circumstances, if the jury believed appellant's testimony, it could have found that appellant was acting in defense of his family when he left his tent, picked up his fishing knife, and walked around to the back of his tent. The jury was not instructed, however, on the defense of one's family. The failure to instruct on defense of family was plain error.

Appellant next argues that the jury should have been instructed on the "duty to retreat" element of self-defense. It is well established that a person has no duty to retreat if attacked in his home. *State v. Peacock* (1883), 40 Ohio St. 333; *State v. Williford, supra.* The Ohio Supreme Court stated in *Peacock,* at 334:

"Where one is assaulted in his home, or the home itself is attacked, he may use such means as are *necessary* to repel the assailant from the house, or to prevent his forcible entry, or material injury to his home, even to the taking of life. * * *" (Emphasis supplied.)

█ The first issue that must be addressed is whether a tent and campsite is the equivalent of a home as described in *Peacock.* Although this issue has not previously been addressed in Ohio, it is the opinion of this court that, for purposes of a duty to retreat, a tent and a home are the logical equivalent of each other. The campsites that appellant and his family occupied and paid to use on the weekend in question were their homes for that time period. The concept underlying the *Peacock* rule is applicable to the instant case.

█ There was testimony presented in the present case that threats were made against appellant, his family, and their temporary homes. Appellant was concerned that those threats might have been carried out, especially in light of the fact that two gallons of flammable Coleman fuel were being kept behind his tent. There was also evidence presented that appellant's confrontation with the victim occurred behind appellant's tent on appellant's campsite.

█ Considering that the state argued that appellant should have retreated with the rest of his family to the safety of their vehicles, the jury, which was not instructed on the *Peacock* rule, may have believed that appellant had the duty to retreat. For the foregoing reasons, appellant had no duty to retreat and, thus, could not have violated that aspect of the self-defense test by remaining on his campsite. Whether or not appellant violated one of the other elements of the self-defense test is a question for a properly instructed jury. It was error for the trial court to fail to give the *Peacock* rule instruction on the "duty to retreat" element of self-defense.

Appellant's first assignment of error is well taken.

In the second assignment of error, appellant asserts that the trial court erred in not permitting appellant to introduce character evidence of the victim. Specifically, appellant wanted to introduce evidence of the victim's propensity for drunkenness and violence.

Appellant defended his actions on the right of self-defense of his family and himself. One of the elements of self-defense is that the defendant was not at fault in creating the situation giving rise to the affray. *State v. Williford, supra.* In order to accomplish this, appellant attempted to show that he was not the aggressor but, rather, the victim of the deceased's advancements.

Evid.R. 404(A), which generally prohibits the admission of a person's character or a trait of his character for the purpose of proving that he acted in conformity therewith, recognizes several exceptions, including:

"(2) *Character of victim.* Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable."

In the present case, the trial court would not permit any character evidence to be presented unless appellant had specific knowledge of the victim's character traits prior to his confrontation with the victim.

It is clear that a defendant may not introduce evidence of a victim's prior specific instances of conduct to show the defendant's state of mind unless the defendant had knowledge of that conduct. If the defendant was not aware of the victim's prior conduct, that conduct is irrelevant as it could not have affected the defendant's state of mind at the time of the incident. *State v. Ramey* (Sept. 19, 1986), Ashtabula App. No. 1251, unreported, 1986 WL 10931; *State v. Carlson* (1986), 31 Ohio App.3d 72, 31 OBR 112, 508 N.E.2d 999; *State v. Smith* (1983), 10 Ohio App.3d 99, 10 OBR 122, 460 N.E.2d 693. The defendant's state of mind is important in determining whether the defense of self-defense is applicable.

However, in the case *sub judice,* appellant attempted to introduce evidence of the victim's propensity for violence to show who was the aggressor. In *State v. Schmidt* (1979), 65 Ohio App.2d 239, 19 O.O.3d 201, 417 N.E.2d 1264, the court held that evidence of the victim's character is, in fact, admissible when it is offered to show that the victim was the aggressor rather than to show the defendant's state of mind. The court stated:

" * * * When evidence of the deceased's violent character is offered ' * * * to show the defendant's state of mind, it is obvious that the deceased's character, as affecting the defendant's apprehensions, must have become known to him; *i.e.*, proof of the character must indispensably be accompanied by proof of its *communication to the defendant;* else it is irrelevant. * * *' (Emphasis *sic.*) 1 Wigmore on Evidence (3 Ed.1940) 467, 470, Section 63. But, when evidence of the deceased's character is offered to show that he was the aggressor, ' * * * this additional element of communication is unnecessary; for the question is what the deceased probably did, not what the defendant probably thought the deceased was going to do. The inquiry is one of objective occurrence, not of subjective belief. * * *' 1 Wigmore on Evidence, *supra,* at pages 470 to 471. Where competent evidence of character is offered for the purpose of showing that the deceased victim was the aggressor, such evidence is admissible, regardless of the extent of the accused's knowledge of such character or of the particular evidence in question. See 1 Wharton's Criminal Evidence (13 Ed.1972), 510, Section 236, and cases cited therein. * * *" *Id.* at 243, 19 O.O.3d at 203, 417 N.E.2d at 1268.

Therefore, appellant should have been permitted to introduce evidence of Paul Pannuto's propensity for violent behavior when intoxicated since it had been established that Pannuto was intoxicated at the time of the stabbing. The trial court erred in not permitting this evidence.

Appellant's second assignment of error has merit.

In the third assignment of error, appellant contends that the trial court erred by not declaring a mistrial due to the conduct of the prosecutor.

The decision whether to grant a mistrial is left to the sound discretion of the trial court. The trial court's decision will not be disturbed absent a showing that the accused has suffered material prejudice. *State v. Sage* (1987), 31 Ohio St.3d 173, 182, 31 OBR 375, 382, 510 N.E.2d 343, 350.

Appellant argues that a mistrial was warranted because the prosecutor had a conversation concerning appellant with one of the state's witnesses during a lunch break. A review of the transcript reveals that the prosecutor was honest with the trial court regarding this incident, and that the court sustained appellant's objection to any line of questioning of that witness that involved the topic of that conversation. Additionally, appellant has failed to show how he was prejudiced by the prosecutor's conduct.

Appellant's third assignment of error is overruled.

In the fourth assignment of error, appellant asserts that the conviction for manslaughter was not supported by sufficient evidence. Under this assigned

error, appellant claims that, since the jury was not properly instructed on the duty to retreat or the privilege to protect one's family members, the jury could not reach a proper conclusion. This argument has been addressed in the first two assignments of error and will not be repeated here.

For the foregoing reasons, the judgment of the trial court is reversed, and this cause is remanded to the trial court for a new trial.

*Judgment reversed*
*and cause remanded.*

CHRISTLEY, P.J., concurs.

FORD, J., concurs with concurring opinion.

FORD, Judge, concurring.

I concur generally with the majority's treatment of the first, second, and third assignments of error. However, for purposes of clarity as to the first assignment, I would add parenthetically at the end of the first assignment dealing with the lack of instruction on the issue of the defense of one's habitation and one's family, that this failure obviously has limited application to the adversarial evidence pertaining to activities allegedly occurring in and closely adjacent to appellant's tent in his campsite.

While I concur in the result achieved by the majority in reversing this matter, I do not share in its analysis of the fourth assignment or the appellant's arguments in support of this subject regarding the claim that the conviction was not supported by legally sufficient evidence. Appellant essentially argues that the jury finding of the elements of voluntary manslaughter were without the benefit of proper instructions on the subject of defense of habitation and family. This intertwining argument in my opinion does not denigrate the legal sufficiency of the evidence in the record of this case when measured against the prevailing standards of *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, or *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, to sustain a conviction for voluntary manslaughter. The present record incorporates legally sufficient evidence to support that result, albeit amplified instructions on the defense issues may provide a basis for a different factual conclusion.

However, it is not appropriate for us to analyze this assignment on a subjective or hypothetical basis, or only on an abbreviated reference to the rationale expressed in this court's opinion dealing with the first two assignments.