OPINION
This appeal is taken from a final judgment of the Portage County Court of Common Pleas. Appellant, Marcus D. Barnes, appeals from his convictions for involuntary manslaughter and felonious assault following a trial by jury. For the following reasons, we affirm in part, reverse in part, and remand the matter for further proceedings consistent with this opinion.
On the night of November 21, 1997, Rebecca Vanaman ("Vanaman"), appellant's girlfriend, picked appellant up from work at approximately 11:00 p.m. After showering and changing cloths, appellant and Vanaman drove to a local bar to shoot pool. The couple stayed at the bar until it closed at 2:00 a.m. During the drive home, Vanaman told appellant that she was hungry and wanted something to eat. As a result, appellant began to drive to a local Burger King to purchase food.
Earlier that day, one of appellant's co-workers, Josh Bentley, had invited appellant to a birthday party at his home. While enroute to Burger King, the couple passed the house where the party was being held. Noticing that there were several cars still there, appellant decided to stop for a minute to say hello.
Upon entering the house, appellant and Vanaman saw a man, Thomas Jenior ("Jenior"), physically restraining another person, Josh Morgan. Appellant approached the two men and said something to Jenior.[1] In response, Jenior told appellant to "shut the fuck up." As a result of this exchange, Jenior and appellant began to argue. Eventually, Jenior asked appellant to step outside on the front porch.
While on the front porch, both appellant and Jenior quieted down and began to calmly talk to each other. However, sometime during their conversation, the future victims, Christopher DeAngelis ("DeAngelis") and Christopher Warwin ("Warwin"), along with several others, crowded around the two men already on the front porch. Soon thereafter, appellant and Warwin began to argue.
Trying to avoid any further conflict, appellant reentered the home to collect Vanaman so they could leave the party. While passing through the house, appellant was seen pushing Vanaman and telling her to get outside. Several people attending the party claimed they heard appellant make a threatening remark about blowing the house up.[2]
During the ensuing confusion, appellant and Vanaman became separated and the whereabouts of Vanaman was never precisely ascertained during this time. Appellant, nevertheless, proceeded to the car he had driven to the party. Once there, testimony revealed that appellant retrieved a pocket-knife from inside the car and began pacing back and forth near the rear bumper.
Several witnesses testified that appellant was looking back toward the front porch and goading the people standing there. Appellant denied directing anything provocative toward the front porch. Instead, he testified that he may have looked in that direction while trying to locate Vanaman so they could leave the party.
While appellant was standing by the car, Warwin left the front porch and began to run toward appellant with DeAngelis trailing close behind. Upon reaching the area where appellant was standing, DeAngelis testified that appellant told Warwin he was going to shoot him. DeAngelis further testified that he saw something concealed in appellant's right hand and thought it was a gun. As a result, DeAngelis told the jury that he tried to tackle appellant in an effort to protect himself and Warwin.
According to DeAngelis, however, before he could reach appellant he was struck in the head. When DeAngelis continued to try to tackle appellant, he was struck several more times. DeAngelis did not see Warwin or appellant strike each other during the confrontation; nor did DeAngelis notice appellant make any threatening move toward either him or Warwin.
According to appellant's testimony, he was standing near the rear of the car when he was unexpectedly struck and knocked to the ground by one of the victims. It was at this point, appellant testified, that he opened the knife to defend himself. Appellant waived his knife back and forth while sitting on the ground in an effort to ward off the attacks of DeAngelis and Warwin.[3]
When Jenior reached the scene of the fight, he saw appellant sitting on the ground with DeAngelis and Warwin slumped over his legs. Jenior picked appellant up and threw him to the side. Appellant regained his feet and shouted to Vanaman, who was now outside, to get into the car. The couple quickly left the scene.
Appellant and Vanaman proceeded to the apartment they shared with appellant's brother, Carl Jones ("Jones"). At the apartment, appellant changed his clothes and washed both the knife and the clothes he had been wearing at the party in the bathroom sink. Appellant then asked Jones to take him to their mother's home. After arriving there, appellant and his mother discussed the situation. As a result of their conversation, appellant decided to turn himself into the Kent Police, which he did at 3:36 a.m.
In the interim, the Kent Police Department had received a 911 call from the witness across the street and from someone at the party. Officers were promptly dispatched to the scene of the incident. When the officers arrived, they learned that someone had copied the license plate of the vehicle in which appellant had left. It also came to the attention of the officers that appellant was a possible suspect. Accordingly, other officers were dispatched across town to appellant's apartment.
When the first officer arrived at appellant's apartment, he noticed that Vanaman's car was parked behind the building. Several other officers subsequently arrived at the complex. One of those officers obtained what he called a telephonic warrant for appellant's arrest.
Lieutenant John Altomare, the senior officer at the scene, arrived around 3:00 a.m. and made the decision to forcefully enter appellant's apartment, despite lacking a search warrant. Once inside, the officers searched the entire apartment but found no one present. While attempting to locate a picture of appellant for identification purposes, one of the officers entered appellant's bedroom and looked in a drawer beside the bed. In that drawer, a damp knife was discovered. In addition to the knife, several items of clothing and a pair of boots were also found in the room.
Back at the scene of the altercation, both DeAngelis and Warwin were transported to Robinson Memorial Hospital. Following an examination, it was determined that DeAngelis had sustained five stab wounds. Because his wounds were not life threatening, DeAngelis was released from the hospital that night after receiving treatment for his injuries.
Warwin, on the other hand, received a single wound to the left armpit. However, this wound was very serious in nature. In fact, when Warwin arrived at the hospital he was already in shock from the loss of blood. Surgery was attempted in order to restore blood flow to his left arm. Despite the surgery and several blood and plasma transfusions, Warwin suffered from organ failure and died from his injury on December 1, 1997.
On November 26, 1997, appellant was indicted by the Portage County Grand Jury on two counts of felonious assault. When Warwin died from his injury, appellant was reindicted on December 12, 1997 for murder. On January 16, 1998, the grand jury filed an amended indictment charging appellant with the attempted murder of DeAngelis.
Prior to trial, appellant filed a motion with the trial court to suppress the evidence obtained during the search of his apartment. After conducting a hearing, the trial court denied appellant's motion, finding that the officers had probable cause to forcibly enter appellant's apartment.
Appellant also filed a notice of intention to introduce evidence of prior violent acts committed by one of the victims to support his theory of self-defense. In response, appellee filed a motion in limine requesting that the trial court prohibit appellant from presenting such evidence. The trial court did not rule on appellee's motion until appellant's attorney attempted to inform the jury during opening statements of the victim's alleged past violent acts. At that time, the trial court orally granted appellee's motion in limine. A written judgment entry to the same effect was subsequently filed on February 12, 1998.
The case proceeded to trial on February 10, 1998. After hearing all of the evidence, the jury returned a verdict of not guilty to the charges of murder and attempted murder. However, appellant was found guilty of involuntary manslaughter and felonious assault.
On April 6, 1998, appellant appeared before the trial court for sentencing. The trial court sentenced appellant to a term of nine years on the involuntary manslaughter conviction and to a term of six years for felonious assault. The trial court further decreed that the sentences would be served consecutively, rather than concurrently.
Appellant filed a timely notice of appeal, and now raises the following five assignments of error for our review:
 "[1.] The verdict of the jury in the case sub judice is against the manifest weight of the evidence and is contrary to law.
 "[2.] The trial court committed prejudicial and reversible error by denying Defendant-Appellant's right to present specific evidence of the alleged victim's character for violence for the purpose of supporting the defense of self-defense.
 "[3.] The trial court committed prejudicial and reversible error by denying Defendant-Appellant's Motion to Suppress Evidence at trial obtained from the forcible and warrantless entry and search of Defendant-Appellant's residence in violation of the rights and protections guaranteed Defendant-Appellant under the Fourth Amendment to the Constitution of the United States.
 "[4.] The trial court erred and abused its discretion by imposing a sentence of imprisonment which is not supported by the record, which is contrary to law and which is excessive by reason of the consecutive terms imposed which exceed the maximum term of the most serious underlying offense.
 "[5.] The trial court committed prejudicial and reversible error by submitting felonious assault to the jury as a lesser included offense of attempted murder."
I.
In his first assignment of error, appellant argues that the jury's verdict was against the manifest weight of the evidence and, as a result, the jury committed a miscarriage of justice by finding him guilty of involuntary manslaughter and felonious assault. Appellant asserts that he should have been acquitted of all charges because the evidence at trial showed that his actions were a defensive response to the unprovoked attack committed by the victims. In other words, appellant believes that he proved, by a preponderance of the evidence, that he acted in self-defense. For the following reasons we disagree.[4]
When reviewing a claim that the judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that that a new trial must be ordered. State v. Martin (1983), 20 Ohio App.3d 172,175. See, also, State v. Thompkins (1997), 78 Ohio St.3d 380,387. Accord, State v. Duong (Dec. 11, 1998), Trumbull App. No. 98-T-0026, unreported, at 2, 1998 WL 964315.
Moreover, "the discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the prosecution appropriately carried its burden of persuasion.Thompkins at 390 (Cook J., concurring).[5] The reviewing court must defer to the findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
The Supreme Court of Ohio has set forth three elements that a criminal defendant must meet to establish self-defense:
 "(1) the slayer was not at fault in creating the situation giving rise to the affray; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the slayer must not have violated any duty to retreat or avoid the danger." State v. Robbins
(1979), 58 Ohio St.2d 74, paragraph two of the syllabus. See, also, State v. Marsh (1990), 71 Ohio App.3d 64, 68; State v. Williams (1996), 115 Ohio App.3d 24, 44-45.
 Because self-defense is an affirmative defense, the burden of going forward with evidence on the issue rests with the proponent and must be proven by a preponderance of the evidence. R.C. 2901.05(A); State v. Palmer (1997), 80 Ohio St.3d 543, 563; Marsh at 68; State v. Woodruff (Dec. 31, 1997), Lake App. No. 96-L-111, unreported, at 2, 1997 WL 837549. "If the defendant fails to prove any one of these elements by a preponderance of the evidence he has failed to demonstrate that he acted in self-defense." (Emphasis in the original.) State v. Williford (1990), 49 Ohio St.3d 247, 249, quoting State v. Jackson (1986), 22 Ohio St.3d 281, 284.
With the foregoing in mind, we will now turn to the merits of appellant's first assignment of error. To assert a colorable claim of self-defense, the defendant cannot be at fault in creating the situation giving rise to the confrontation. If the evidence shows that the defendant provoked the attack, the defense of self-defense will not be available. State v. Gibbs (June 28, 1982), Lake App. No. 9-018, unreported, at 1, 1982 WL 5809.
As previously indicated, the surviving victim, DeAngelis, testified that when appellant and Jenior left the house, he and Warwin followed the two men, and at some point during the fracas on the front porch, Warwin attempted to grab or punch appellant.[6] Furthermore, appellant admits that after leaving the home and returning to Vanaman's vehicle, he retrieved a knife from inside the car and stood by the rear of the vehicle. Shortly thereafter, however, it is undisputed that appellant was suddenly confronted by DeAngelis and Warwin, and despite the absence of any threatening gesture on the part of appellant, DeAngelis attacked appellant in an alleged effort to disarm him. Clearly, then, appellant was not at fault in creating the immediate situation leading up to the fatal confrontation. Therefore, based on this evidence, we conclude that appellant has satisfied the first prong in proving self-defense.
Appellant was next required to prove that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from the danger was the use of deadly force. In Ohio, this element of self-defense is a combined subjective and objective test. State v. Thomas (1997),77 Ohio St.3d 323, 330. Accordingly:
 "the jury first must consider the defendant's situation objectively, that is, whether, considering all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history, and conditions at the time of the attack, she reasonably believed she was in imminent danger. * * * Then, if the objective standard is met, the jury must determine if, subjectively, this particular defendant had an honest belief that she was in imminent danger. Id.
(Emphasis and citations omitted.) See, also, State v. Sheets
(1926), 115 Ohio St. 308.
 Coupled with the second element of self-defense is an additional requirement that the defendant only use the force which is reasonably necessary to repel the attack. Williford at 249. See, also, State v. Mogul (May 15, 1998), Trumbull App. Nos. 97-T-0018 and 97-T0067, unreported, at 4, 1998 WL 258164. As such, a person may only use deadly force if he or she has a legitimate belief that death or great bodily harm will result from the attack. Gibbs at 2. See, also, State v. Pannetti
(Sept. 3, 1998), Cuyahoga App. No. 73044, unreported, at 2, 1998 WL 564007; State v. Fox (1987), 36 Ohio App.3d 78, 79; State v. Perez (1991), 72 Ohio App.3d 468, 472.
After reviewing the facts from appellant's perspective, we conclude that appellant possessed an honest and reasonable belief that he was in imminent danger of death or great bodily harm. Credibility was not a significant issue here because all of the testimony is fairly consistent as to the sequence of events just outlined. The evidence showed that appellant arrived at a party where he was the only African-American in attendance, and shortly thereafter he became involved in a verbal altercation with one of the guests. Although the tension between Jenior and appellant eventually subsided, appellant was subsequently confronted by another guest, Warwin, who attempted to grab or strike him. This dispute ended when appellant went back inside the house to collect Vanaman. However, appellant was again unexpectedly confronted by Warwin and DeAngelis while waiting for Vanaman beside her automobile. It was at this point that appellant was knocked to the ground.
The evidence also showed that DeAngelis was six feet tall and weighed somewhere around one hundred eighty pounds, while Warwin was six feet three inches tall and weighed close to two hundred fifteen pounds. Appellant, on the other hand, is six feet one inch tall and only weighs one hundred forty-five pounds. There was, therefore, an undisputed size differential between the victims and appellant. Thus, taken into consideration with the suddenness and violence of the attack, appellant's claim that he was in fear of death or serious bodily harm was reasonable under the circumstances.
As for the use of deadly force, there was no testimony introduced at trial suggesting that either DeAngelis or Warwin were armed. That fact standing alone, however, is not dispositive of appellant's claim. Several factors must be taken into consideration when determining whether or not deadly force was appropriate to repeal an unarmed attack, including, but limited to, the respective size of the parties, the presence of multiple assailants, and the especially violent nature of the unarmed attack. LaFave Scott, Substantive Criminal Law, (1986) 653, Section 5.7(b). The law does not require that a person use the least amount of force necessary, but only that the force used not be excessive.
Based on the evidence presented to the jury, we cannot say that appellant was unjustified in using such force. Appellant was standing by himself when he was attacked by two substantially larger individuals, one of which admitted that appellant had made no threatening gestures toward the victims. While the law does not encourage the use of deadly force, certainly, a person should not be expected to lay motionless while two larger men pummel him. Accordingly, we conclude that appellant proved by a preponderance of the evidence that he honestly and reasonably believed that he was in imminent danger of death or great bodily harm, and that deadly force was necessary to protect himself.
Finally, this court needs to determine whether or not appellant violated his duty to retreat. In most situations, a person may not kill in self-defense if he has available a reasonable means of retreat from the confrontation in complete safety. Williford at 250. Thus, the possibility of one's own retreat must necessarily be eliminated in order to establish a valid claim of self-defense. Woodruff at 3.
From the evidence introduced at trial it appears that appellant had many opportunities to retreat and avoid danger, which he failed to do. Testimony showed that appellant left the front porch and reentered the house to leave the party. However, instead of exiting the house and entering the car and leaving the party, appellant retrieved a knife from inside the vehicle and stood outside of the car.
Appellant explained his actions by testifying that he had lost sight of Vanaman in the confusion and that he was worried for her safety. While appellant proposes a noble motive for his conduct, nothing in the record indicates that Vanaman was in trouble at any time during that night. Moreover, there was nothing to stop appellant from waiting for his girlfriend inside the vehicle. In fact, by retrieving a knife from the car, appellant's action in this regard reinforced his intent to stand his ground. Thus, this court concludes that appellant violated his duty to retreat.
By finding appellant guilty, the jury must have concluded, in weighing the evidence, that appellant failed to prove self-defense by a preponderance of the evidence. After reviewing the entire record and weighing the evidence presented along with all reasonable inferences, we conclude that the jury did not lose its way or create a manifest miscarriage of justice in connection with appellant's convictions for involuntary manslaughter and felonious assault with respect to the amount and character of the evidence before it. The jury could reasonably find that while appellant did not cause the altercation and that deadly force was appropriate under the circumstances, appellant violated his duty to retreat. The weight of much of the evidence rested on the credibility of the witnesses at trial, which is an issue within the sound discretion of the trier of fact. This court not will disturb those findings on appeal unless the testimony in question was completely lacking in credibility, which is not the case in the instant matter. Williams at 45. Appellant's first assignment of error is without merit.
II.
In assignment of error two, appellant argues that the trial court erred in refusing to allow him to introduce specific instances of Warwin's alleged prior violent conduct at trial. According to appellant, such evidence was necessary to support his claim that Warwin was the aggressor and that he was only acting in self-defense. Appellant maintains that such evidence is admissible when offered to show that that the victim was the aggressor, regardless of whether or not the person arguing self-defense knew of the particular past violent acts.
As a preliminary matter, appellee argues that appellant failed to preserve the alleged error for review because his trial counsel did not raise the issue on the record at the appropriate place in the trial after the court had granted appellee's motionin limine. "The effect of the granting of a motion in limine in favor of the state in a criminal proceeding is to temporarily prohibit the defendant from making reference to evidence which is the subject of the motion." State v. Grubb (1986), 28 Ohio St.3d 199, paragraph one of the syllabus. As a result, "it is incumbent upon a defendant, who has been temporarily restricted from introducing evidence by virtue of a motion in limine, to seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal." Id. at paragraph two of the syllabus.
If the party opposing a motion in limine fails to properly preserve the objection, an appellate court is not required to review the propriety of the order. Id. at 203. See, also,Garrett v. Sandusky (1994), 68 Ohio St.3d 139, 141; State v.Rendina (Dec. 23, 1999), Lake App. No. 98-L-129, unreported, at 4, 1999 WL 1313650; State v. Evans (Dec. 11, 1998), Lake App. No. 97-L-260, unreported, at 5, 1998 WL 964559.
In the case at bar, appellee filed its motion in limine prior to the commencement of trial. However, the trial court did not rule on the motion until appellee raised an objection over the introduction of alleged prior violent acts during appellant's opening statement. At that time, the trial court, on the record, orally granted appellee's motion and prohibited appellant's attorney from discussing such evidence. In addition, the trial court filed a written judgment entry setting out its ruling.
Appellant's attorney both objected to the trial court's ruling on the record and filed a trial brief further setting out his objection. Appellee argues that this was not enough to preserve the alleged error for review and that appellant should have raised the issue again when he wished to introduce the evidence at trial.
We disagree. When the trial court filed a written judgment entry, that effectively foreclosed any opportunity by appellant to raise the issue again at trial. Based on these facts, we conclude that appellant has sufficiently preserved the alleged error for review.[7]
As to the merits of appellant's second assignment, we conclude that the trial court erred in precluding appellant from introducing evidence of Warwin's alleged past violent conduct. It is well-settled that evidentiary rulings are within the broad discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. State v. Noling (June 30, 1999), Portage App. No. 96-P-0126, unreported, at 23, 1999 Ohio App. LEXIS 3095, citing State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
In general, "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion." Evid.R. 404(A). An exception to the general rule can be found in Evid.R. 404(A)(2), which states:
 "Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible[.]"
 While Evid.R. 404 addresses when character evidence is admissible, Evid.R. 405 provides for the methods of proving a person's character. It states as follows:
 "(A) Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
 "(B) Specific instances of conduct. In cases in which character or a trait of character of a person is an essential element of charge, claim, or defense, proof may also be made of specific instances of his conduct."
 Whether evidence relating to the victim's character is admissible to prove self-defense depends upon the type of evidence being offered. Typically, such evidence falls into two categories: (1) testimony concerning the victim and offered to demonstrate the defendant's state of mind at the time of the incident, and (2) testimony about the victim's character offered to prove that the victim was more likely the aggressor.
For the first purpose, to show the defendant's state of mind at the time of the incident, the defendant is permitted to testify about specific incidents of the alleged victim's violent behavior only if the defendant was aware of them at the time of the confrontation. State v. Ramey (Sept. 19, 1986), Ashtabula App. No. 1251, unreported, at 2, 1986 WL 10931. If the defendant was unaware of the victim's prior conduct, that conduct is irrelevant because it could not have affected the defendant's state of mind.Marsh at 70.
Here, appellant attempted to introduce evidence of the victim's propensity for violence to show that Warwin was the aggressor. However, the trial court foreclosed this attempt when it granted appellee's motion in limine. In reaching its decision, the trial court concluded that cases in which such evidence was allowed were unclear as to the precise nature of the offered character evidence. As a result, the trial court ruled that appellant could not introduce evidence of Warwin's past violent acts to prove that he was the aggressor.
One of the cases the trial court disregarded was a decision from this court. In Marsh, supra, the defendant wanted to introduce evidence of the victim's propensity for drunkenness and violence to support his claim of self-defense. The trial court, however, would not permit any character evidence to be presented unless the defendant had specific knowledge of the victim's character traits prior to his confrontation with the victim.
Instead of trying to show his state of mind, the defendant inMarsh was attempting to introduce evidence of the victim's propensity for violence to show who was the aggressor. Relying onState v. Schmidt (1979), 65 Ohio App.2d 239, we noted that when evidence of a victim's character is offered to show he was the aggressor, communication to the person claiming self-defense is unnecessary because the question is what the deceased probably did rather, than what the defendant thought the deceased was going to do. Marsh at 71. As a result, we held that "[w]here competent evidence of character is offered for the purpose of showing that the deceased victim was the aggressor, such evidence is admissible, regardless of the extent of the accused's knowledge ofsuch character or of the particular evidence in question." (Emphasis added.) Id., quoting Schmidt at 243. See, also, Statev. Favors (Sept. 5, 1996), Fairfield App. No. 95-CA-77, unreported, at 6-7, 1996 Ohio App. LEXIS 4471 (holding that a defendant claiming self-defense can introduce evidence of specific acts of violence by the victim, regardless of whether or not the defendant knew of them, to show that the victim was the aggressor).
We realize that our decision in Marsh conflicts with those of several other Ohio courts which have ruled on this issue. SeeState v. Weston (July 16, 1999), Washington App. No. 97CA31, unreported, at 38, 1999 Ohio App. LEXIS 3411; State v. Douglas
(Mar. 16, 1999), Mahoning App. No. 94 CA 214, unreported, at 15, 1999 Ohio App. LEXIS 1088; State v. Scott (Sept. 7, 1995), Cuyahoga App. No. 67148, unreported, at 25-27, 1995 Ohio App. LEXIS 3880; State v. Cuttiford (1994), 93 Ohio App.3d 546, 555;State v. Busby (Sept. 14, 1999), Franklin App. No. 98AP-1050, unreported, at 5, 1999 WL 710353.
In those decisions, the courts based their conclusion on the assumption that, although the victim's propensity for violence is relevant to the issue of self-defense and may corroborate the defendant's claim, evidence of such is not an essential element of self-defense. Evid.R. 405(B). Hence, these courts believe that evidence concerning whether the victim was the aggressor should be limited to reputation or opinion and not instances of specific acts.
Evidence regarding a person's character is generally inadmissible for the purpose of showing that the person acted in conformity with his character at a particular time. Evid.R. 404(A). However, as we previously noted, there are certain exceptions to that general rule. Under Evid.R. 404(A)(2), a criminal defendant is permitted to introduce evidence of the victim's character to show that the victim was the first aggressor. If the intended evidence relates to specific incidents of conduct, however, Evid.R. 405(B) limits the use of such evidence to those situations where the character of the person is an essential element of a charge, claim, or defense.
We understand the concerns surrounding the introduction of character evidence, and recognize that in many instances, its probative value is substantially outweighed by its potential adverse effect on the fairness of the proceedings. Nevertheless, after a careful review of Evid.R. 404, Evid.R. 405, and the elements of self-defense, we believe that those courts prohibiting the use of specific acts evidence are construing the rules too narrowly.
To be successful on a claim of self-defense, a defendant must first be able to show that he was not at fault in creating the situation leading to the affray. Logically, one would assume that if the victim has a propensity for violence, evidence demonstrating such propensity would be relevant as to the question of who started the fracas. In a sense then, the victim's propensity for violence is an essential element of the defendant's defense, and evidence to that effect should be admissible.
Finally, appellee attempts to justify the trial court's exclusion of specific acts evidence and distinguish Marsh by arguing that appellant was able to introduce other evidence of Warwin's character to support his theory that Warwin was the aggressor. However, just because appellant was permitted to introduce opinion and reputation evidence relating to Warwin's alleged violent propensities does not erase the fact that appellant was hindered in his defense by the trial court's ruling with respect to specific acts evidence. As a result, appellant's second assignment of error has merit.
III.
In the third assignment of error, appellant challenges the trial courts refusal to suppress the evidence obtained in the search of his apartment. Under this assignment, appellant presents two issues for our consideration. First, appellant submits that the officers who forcibly entered his home lacked sufficient justification to conduct a warrantless search of his apartment. With regard to the second issue, appellant argues that the subsequent written consent he gave the police to search his apartment did not abate the taint of the allegedly unlawful search, and, furthermore, that his consent directly resulted from that illegal search.
It is a fundamental tenet of constitutional law that a warrantless search is, per se, unreasonable and therefore violative of the Fourth Amendment, unless it falls within one of the specifically established exceptions to the warrant requirement. Katz v. United States (1967), 389 U.S. 347, 357. See, also, State v. Rudge (Dec. 20, 1996), Portage App. No. 95-P-0055, unreported, at 5, 1996 WL 761161; State v. Corrado
(Feb. 20, 1998), Lake App. No. 96-L-104, unreported, at 7, 1998 Ohio App. LEXIS 642. However, not every constitutional violation necessarily requires the reversal of a criminal conviction.
Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded" as harmless error. "Otherwise stated, the accused has a constitutional guarantee to a trial free from prejudicial error, not necessarily one free of all error." Statev. Brown (1992), 65 Ohio St.3d 483, 485.
The United States Supreme Court has formally recognized the application of the harmless error rule to constitutional errors.Brown at 485, citing Chapman v. California (1967), 386 U.S. 18,22. However, before an appellate court can hold a constitutional error to be harmless, the reviewing court must be able to conclude that the error is harmless beyond a reasonable doubt. Brown at 485; State v. Vitanza (Mar. 27, 1992), Lake App. No. 91-L-053, unreported, at 3, 1992 WL 190586.
In State v. Tabaskso (1970), 22 Ohio St.2d 36, syllabus, the Supreme Court of Ohio held:
 "In a criminal prosecution, the allegedly erroneous admission in evidence of items unlawfully seized is harmless beyond a reasonable doubt and does not provide grounds for reversal of the conviction where the pertinent testimony of witnesses at the trial is not the product such seizure and is overwhelmingly sufficient to independently establish the elements of the offense beyond a reasonable doubt."
The court in Tabasko arrived at its decision without first determining whether the police conduct at issue violated any of the defendant's constitutional rights. Instead, the court directed its attention to whether the evidence of the items seized during the search prejudiced the defendant. Because the state's case included testimony which, standing alone, overwhelmingly established beyond a reasonable doubt that the defendant was guilty, the court concluded that any alleged constitutional violation was harmless, and as a result, it was unnecessary to address the defendant's claims on appeal. Tabasko at 41.
Similarly, in Brown, supra at 486, the Supreme Court found it unnecessary to first decide the validity of the alleged constitutional violation before holding that any error by the trial court in failing to suppress items seized in a search was harmless beyond a reasonable doubt. The court's decision was again based on the presence of overwhelming evidence of appellant's guilt, excluding the evidence which was seized during the alleged unlawful search.
Therefore, we conclude that even if we were to find that the police conducted an unlawful search, such constitutional violation would not be grounds for the reversal of appellant's convictions because the introduction of the knife seized from appellant's apartment amounted to harmless error beyond a reasonable doubt. At trial, several witnesses testified that they noticed appellant was holding an object in his hand immediately before the fatal confrontation. In addition, the emergency room physician testified that the wounds received by DeAngelis and Warwin were consistent with being caused by a knife.
More importantly, appellant testified on his own behalf at trial and admitted to using a knife during the assault. While appellant now argues that the decision to testify about the knife was dictated by the trial court's failure to suppress the evidence, this assertion is mere conjecture, especially in light of appellant's decision to plead self-defense.
Looking at all of the evidence presented by both sides during the trial, we conclude that, in light of the overwhelming evidence that appellant used a knife during the altercation, the trial court's failure to suppress the knife was harmless error. As a result, appellant's substantial rights were not prejudiced at trial because there is no reasonable possibility that the jury would have acquitted him if the knife had not been admitted into evidence.
Under other circumstances, the actions by the officers in this case could easily have resulted in a reversal of the entire case. This court has previously held that there is no authority for the issuance of a telephonic arrest warrant in Ohio. State v.Garrett (1991), 76 Ohio App.3d 57, 62. Furthermore, although appellee maintains that there were exigent circumstances justifying the warrantless entry into appellant's apartment, that argument is tenuous at best; not to say anything about the questionable searching of drawers for a picture with which to identify appellant. In any event, we are still compelled by the doctrine of harmless error to conclude that appellant's third assignment of error is without merit.
IV.
In his fourth assignment of error, appellant submits that the trial court erred when it sentenced him to serve nine years for involuntary manslaughter with an additional six years for felonious assault, because the trial court failed to make a finding that appellant was not entitled to the shortest prison term. Appellant also argues under this assignment that the trial court failed to provide any findings justifying the imposition of consecutive sentences.
In accordance with R.C. 2953.08, our review of a felony sentence is de novo. State v. Raphael (Mar. 24, 2000), Lake App. No. 98-L-262, unreported, at 4, 2000 Ohio App. LEXIS 1200; Statev. Whittenberger (Dec. 3, 1999), Portage App. No. 98-P-0047, unreported, at 7, 1999 Ohio App. LEXIS 5770. However, this court will not disturb appellant's sentence unless we find, by clear and convincing evidence, that the record does not support the sentence or that the sentence is otherwise contrary to law. State v. Thomas
(July 16, 1999), Lake App. No. 98-L-074, unreported, at 10, 1999 Ohio App. LEXIS 3334, quoting State v. Rose (Sept. 15, 1997), Clermont App. No. CA96-11-106, unreported, at 15, 1997 Ohio App. LEXIS 4161. Clear and convincing evidence is that evidence which will produce in the mind of the trier of fact a firm belief or conviction as the facts sought to be established. Thomas at 10.
Under the prior law governing sentencing, trial courts were not required to explain their findings of fact or reasons for a particular sentence. State v. Brown (1984), 12 Ohio St.3d 147. Now, however, R.C. 2929.14(B) requires a sentencing court to impose the minimum sentence for first-time imprisonment unless it specifies on the record that the shortest prison term would demean the seriousness of the conduct or would not adequately protect the public from future crime by the offender. Unless the sentencing court imposes the shortest prison term, the record of the sentencing hearing must reflect that the court found that either one or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence. However:
 "R.C. 292914(B) does not require that the trial court give its reasons for its findings that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence." State v. Edmonson (1999), 86 Ohio St.3d 324, syllabus. (Emphasis in the original.) See, also, State v. Rone (Dec. 4, 1998), Ashtabula App. No. 98-A-0001, unreported, at 2, 1998 WL 964297.
 In the case at bar, the sentencing entry contains no discussion of the factors under R.C. 2929.14(B). It merely provides in pertinent part that:
 "The Court further finds that this is the worst form of the offense due to the serious physical harm caused and the death of one victim and for the reasons stated on the record, and after consideration of the factors under Revised Code 2929.12, the Court finds that prison is consistent with the purpose of Revised Code Section 2929.11 and the Defendant is not amenable to community control sanction.
 "The court further finds that since the harm was so great or unusual that [a] single term does not adequately reflect the seriousness of the conduct."
 The transcript of the sentencing hearing reveals little more. When debating whether or not the crimes committed were the worst forms of the offense, the trial court made the following observation:
 "Now had that been the extent of it, and Mr. Warwin and Mr. DeAngelis had followed him [appellant] down there and beat him up, they might well be in some problems here today. But Mr. Barnes, you went in that car and you got a deadly weapon out, and you intended to use it to assault these people. You can call it defense if you want, but it's hardly a defense when you have a deadly weapon and they don't, and you could have left the scene."
Although the court eventually did not impose the maximum sentence for either offense, no findings are ever made that the shortest prison term would demean the seriousness of the appellant's conduct or would not adequately protect the public from future harm at the hands of appellant to support its deviation from the minimum sentence. With the record before us, there is no confirmation that the trial court considered imposing the minimum sentence for either offense and then departed from the statutorily mandated minimum based on one or both of the permitted reasons.
Appellant also maintains that the trial court abused its discretion when it imposed consecutive sentences. Again, appellant argues that the trial court failed to provide sufficient findings of fact to justify such a sentence, and that the absence of such findings makes the sentence contrary to law.
R.C. 2929.14(E)(4) provides in part:
 "(E)(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger of the offender poses to the public and if the court also finds any of the following:
"* * *
 "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct."
 Edmonson only addressed the trial court's duty with respect to sentencing an offender to the maximum term for a single offense. However, after considering the language of R.C. 2929.14(B) and R.C. 2929.14(E)(4), we believe that the same rationale applies when a trial court imposes consecutive sentences. Rone at 2; State v. Kase (Sept. 25, 1998), Ashtabula App. No. 97-A-0083, unreported, at 2, 1998 WL 682392; State v. Pratt (Sept. 25, 1998), Lake App. No. 97-L-208, unreported, at 10, 1998 Ohio App. LEXIS 4521.
Here, the trial court only states that "[s]ince there were two victims here, two separate stabbings, the Court feels that concurrent sentences would not realize the seriousness of the attack on the two individuals." The trial court provided no other reasoning in support of its decision.
Although the above remarks by the trial court might be argued to support a finding that consecutive sentences were warranted, the trial court failed to make the initial finding that consecutive sentences were necessary to protect the public from future crime or to punish appellant, and that consecutive sentences were not disproportionate to the seriousness of appellant's conduct and to the danger appellant poses to the public.
After reviewing both the sentencing entry and the transcript from the sentencing hearing, we conclude, by clear and convincing evidence, that the trial court did not make the required findings to support appellant's sentence in accordance with Edmonson. In particular, the trial court did not find that the shortest prison term would demean the seriousness of the offenses or that it would inadequately protect the public from future criminal acts by appellant. The trial court also failed to find that consecutive sentences were necessary to protect the public or to punish appellant. Accordingly, appellant's fourth assignment of error has merit.
V.
In his final assignment of error, appellant argues that the trial court erred in sua sponte instructing the jury that felonious assault is a lesser-included offense of attempted murder. In doing so, appellant acknowledges that he never objected to the instruction during the trial. However, he maintains that such instruction constituted plain error and, thus, is reviewable on appeal.
Crim.R. 30(A) provides that a party may not assign as error the giving of an instruction unless an objection is noted on the record. As such, the failure to object acts as a waiver, except for plain error, with respect to that issue. State v. Goodwin
(1999), 84 Ohio St.3d 331, 346. See, also, State v. McMillen
(Sept. 29, 1995), Ashtabula App. No. 94-A-0050, unreported, at 22, 1995 Ohio App. LEXIS 4340.
Under Crim.R. 52(B), an appellate court may recognize plain error on the part of a trial court if the defect affects a person's substantial rights. However, the power afforded to notice plain error should be cautiously used and only exercised in exceptional circumstances to avoid a miscarriage of justice.State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. In other words, the plain error rule should be not be invoked unless, but for the error, the outcome of the trial would have clearly been different.
To qualify as a lesser-included offense, the following requirements must be met:
 "(i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." State v. Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus.
 The Supreme Court of Ohio has recently noted that the question of whether or not felonious assault is a lesser-included offense of murder or attempted murder has yet to be resolved in this state. State ex rel. Beaver v. Konteh (1998), 83 Ohio St.3d 519, fn. 1. As a result, the appellate courts in Ohio remain split on this issue. See State v. Williams
(1998), 81 Ohio St.3d 1262 (Cook, J., dissenting).
A majority of the courts confronting the question have held that felonious assault is not a lesser-included offense of murder or attempted murder. See State v. Nelson (1996), 122 Ohio App.3d 309,314-315; State v. Williams (Mar. 20, 1998), Lucas App. No. L-96-353, unreported, at 17, 1998 Ohio App. LEXIS 1020; State v.Hammers (Feb. 28, 1996), Medina App. No. 2469-M, unreported, at 5, 1996 Ohio App. LEXIS 775; and State v. Johnson (Feb. 18, 1988), Franklin App. No. 86AP-868, unreported, at 7, 1988 Ohio App. LEXIS 527. But, see, State v. Heath (June 25, 1997), Hamilton App. No. C-950676, unreported, at 24-25, 1997 Ohio App. LEXIS 2726; Statev. Kaiser (Oct. 15, 1986), Montgomery App. No. 9287, unreported, at 9, 1986 Ohio App. LEXIS 8756; and State v. Box (1993),89 Ohio App.3d 614, 619.
While felonious assault does contain elements which are similar to attempted murder, they differ in two respects. First, to commit attempted murder, a person must act purposely. In contrast, to be guilty of felonious assault, a person only needs to have acted in a knowing manner. This difference, however, does not necessarily preclude a lesser-included instruction. Instead, under the third element of Deem, to be a lesser-included offense, there must be an element of the greater offense that is not required to convict a person of the lesser charge. Here, that element would be the alleged offender's mens rea.
Our analysis does not end there because it is the second element under Deem which is relevant to this case; that is, whether felonious assault is automatically committed whenever attempted murder is committed. In the case before us, it is important to note that the trial court's instructions regarding felonious assault tracked the language of R.C. 2903.11(A)(2) and specifically referred to "physical harm * * * by means of a deadly weapon."[8]
A careful review of the language of both statutes in question makes it clear that, while attempted murder necessarily involves attempting to cause serious physical harm to another, there is no requirement that it be carried out by means of deadly weapon or dangerous ordinance, i.e., a knife. As a result, since attempted murder can be committed without felonious assault also being committed at the same time, as it is defined in subsection (A)(2), the second prong of the Deem test is not satisfied.
Based on the above determination, we conclude that, after applying the factors set forth in Deem, felonious assault with a deadly weapon is not a lesser-included offense of attempted murder. This is not to say that felonious assault can never be a lesser-included offense of attempted murder. If a person were charged with felonious assault under subsection (A)(1), which lacks the requirement of a deadly weapon or dangerous ordnance, felonious assault may very well be a lesser-included offense of attempted murder. Here, however, the trial court specifically charged the jury according to R.C. 2903.11(A)(2). Accordingly, we hold that the trial court committed plain error in sua sponte
instructing the jury as such. Appellant's fifth assignment of error is sustained to the extent that the jury was improperly instructed with respect to felonious assault being a lesser-included of attempted murder.
For the foregoing reasons, appellant's second, fourth, and fifth assignments of error have merit. Appellant's first and third assignments of error are not well-taken. As a result, the judgment of the trial court is affirmed in part, reversed in part, and we remand the matter for further proceedings consistent with this opinion.
 _______________________________ DONALD R. FORD, PRESIDING JUDGE
CHRISTLEY, J., dissents with Dissenting Opinion,
O'NEILL, J., concurs.
[1] During the trial, Jenior testified that appellant told him to let Morgan go and let him "get his ass kicked." Appellant, however, testified that he said something to the effect that Morgan was being a little rowdy.
[2] At trial, appellant denied ever saying anything threatening to anyone while at the party.
[3] Appellant's story was partially corroborated at trial by a witness living across the street. This witness said that she saw a person knocked to the ground and subsequently attacked by a group of people.
[4] Appellant does not challenge the manifest weight of the evidence with regard to the offenses themselves. Accordingly, we will limit our discussion to whether or not appellant proved he acted in self-defense.
[5] Presumably, the same would hold true for the defendant when self-defense is asserted.
[6] No testimony was presented relating to any contact between DeAngelis and appellant on the front porch.
[7] We would like to note that in his brief and during oral argument, appellant claims to have renewed his objection and proffered the evidence that was suppressed at the close of appellee's case. However, the pages of the transcript which appellant refers to are not included in the record before this court, and our review of the entire record does not disclose such an occurrence.
[8] In its brief, appellee argues that there is no "deadly weapon" requirement in R.C. 2903.11(A)(1), and as a result, that section of felonious assault meets the Deem test. However, appellee's argument is without merit because the jury was clearly charged under R.C. 2903.11(A)(2), which does require the use of a deadly weapon.