THE STATE OF OHIO, APPELLANT, *v.* GILMORE, APPELLEE.

[Cite as State *v.* Gilmore (1986), 28 Ohio St. 3d 190.]

(No. 86-313—Decided December 26, 1986.)

*Lee C. Falke,* prosecuting attorney, and *Walter F. Ruf,* for appellant. *Ensley & Eilerman* and *Timothy N. O'Connell,* for appellee.

DOUGLAS, J. The issue presented in this case is whether a proffer of excluded evidence is required in every situation to preserve, for appellate review, an evidentiary ruling which is alleged to be in error. We answer in the negative.

Evid. R. 103 provides, in pertinent part:

"(A) *Effect of erroneous ruling.* Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

"\* \* \*

"(2) *Offer of proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer *or was apparent from the context within which questions were asked.* Offer of proof is not necessary if evidence is excluded during cross-examination." (Emphasis added.)

Pursuant to the explicit provisions of this rule, a party may not predicate error on the exclusion of evidence during the examination in chief unless *two* conditions are met: (1) the exclusion of such evidence must affect a substantial right of the party *and* (2) the substance of the excluded evidence was made known to the court by proffer *or* was apparent from the context within which questions were asked.

In accordance with this interpretation of Evid. R. 103, we modify our ruling in *State* v. *Hipkins* (1982), 69 Ohio St. 2d 80 [23 O.O.3d 123]. In *Hipkins,* at 82, this court stated:

"Furthermore, it is well settled that when a court has sustained objections to an inquiry during the examination in chief, a statement must be made as to what the expected answer would be in order that the reviewing

court can determine whether or not the [ruling of the] trial court is prejudicial. *Smith v. Rhodes* (1903), 68 Ohio St. 500, 505.* * *"

While the better practice, in every instance, may be to proffer excluded evidence, under Evid. R. 103 a party is not *required* to proffer excluded evidence in order to preserve any alleged error for review if the substance of the excluded evidence is apparent to the court from the context within which questions were asked.

Appellant argues that appellee's failure to *proffer* the statements allegedly made to him by Smith rendered the record insufficient for the court of appeals to find that prejudicial error had occurred. To base error on evidence not expressly proffered, appellant argues, would require a reviewing court to speculate as to the merits of the alleged error. Under the specific facts presented in this case, we do not agree with appellant's argument.

Upon review of the record, we note the following testimony from appellee's direct examination during his case in chief:

"Q. All right, now, at the time of this first meeting, did Kelly make any request of you?

"A. Yes.

"Q. What was that request?

"A. That was—

"Ms. Howland [assistant prosecutor]: Objection, hearsay.

"The Court: Sustained.

"* * *

"Q. Who originated the discussion about cocaine?

"Ms. Howland: Objection.

"The Court: Sustained.

"* * *

"Q. Owen, you say that you met Kelly Smith in late September, 1984; is that correct?

"A. That's right.

"Q. And then, on October 12, 1984, how many times did you come into contact with her?

"A. I'd say at least 12 times. That's at the least.

"Q. Twelve times, okay. Now on those 12 occasions, did the subject of narcotics come up?

"A. Yes.

"Q. And who originated that subject?

"A. Kelly Smith did.

"Q. Did she ask you to sell her drugs?

"Ms. Howland: Objection.

"The Court: Sustained.

"* * *

"Q. Was it your understanding that Kelly wanted you to make drug sales?

"Ms. Howland: Objection.

"The Court: Sustained.

"* * *

"Q. I want to take you now to October, around the 12th. Did you have a meeting with Kelly Smith on that day?

"A. Yes.

"Q. All right, and at that meeting, did Kelly ask you to—

"Ms. Howland: Objection.

"* * *

"Q. —make a sale of drugs?

"The Court: Let him finish his question.

"Ms. Howland: Sorry.

"The Court: Now, it's sustained.

"* * *

"Q. Did you agree at that final meeting to make a sale of cocaine?

"A. Yes, I did, because of the constant—

"Ms. Howland: Objection.

"The Court: Sustained, you have answered the question.

"* * *

"Q. Why was it you agreed to make that sale.

"Ms. Howland: Objection.

"The Court: He made—that's opened. He may answer subject to a motion to strike.

"* * *

"Q. Why was it that you agreed to make that sale?

"A. Because I was badgered for the past three weeks to make the sale.

"Ms. Howland: Motion to strike.

"The Court: Sustained."

The questions presented throughout appellee's above-noted testimony reveal that appellee was trying to establish that he, appellee, had been induced to sell cocaine. From the context of the questions asked, we find, in accordance with Evid. R. 103(A)(2), that the intended testimony was obvious: appellee would have stated that Smith repeatedly urged him to sell cocaine. Thus, the court of appeals did have a sufficient record upon which to base its finding that appellee's testimony had been improperly excluded.

Having so decided, the foregoing determination does not, however, dictate that appellee be granted a new trial. As noted, a party may not predicate error on the exclusion of evidence unless *two* conditions are met. While appellee in this case has fulfilled one of those conditions, he did not demonstrate that the exclusion of Smith's statements affected any substantial right of appellee. Moreover, we are convinced that even if the excluded testimony had been admitted, such evidence would not negate the overwhelming proof of defendant's guilt. See *State* v. *Williams* (1983), 6 Ohio St. 3d 281, paragraph six of the syllabus.

Accordingly, the judgment of the court of appeals is reversed and the judgment of the trial court is reinstated.

*Judgment reversed.*

SWEENEY, LOCHER, HOLMES, C. BROWN and WRIGHT, JJ., concur.

CELEBREZZE, C.J., concurs in part and dissents in part.

CELEBREZZE, C.J., concurring in part, dissenting in part and dissenting from the judgment. I certainly agree with the majority's conclusion that the subject matter of the improperly excluded testimony (*i.e.,* entrapment defense) was apparent from the context and nature of the questions posited by defense counsel during appellee's direct examination. Cf. *Price v. Daugherty* (1982), 5 Ohio App. 3d 157; *Bilikam v. Bilikam* (1982), 2 Ohio App. 3d 300, 304[1]; *United States v. Callahan* (C.A. 6, 1977), 551 F. 2d 733.[2] See, also, 1 Weissenberger, Ohio Evidence (1985), Section 103.2. However, I part company with this court's conclusion that under Evid. R. 103(A) the exclusion of this crucial evidence did not affect a "substantial right" of appellee. See, also, Crim. R. 52.

It is beyond debate that "[e]ntrapment is an affirmative defense under R.C. 2901.05(C)(2)." *State v. Doran* (1983), 5 Ohio St. 3d 187, paragraph two of the syllabus. In this case appellee admitted that he sold cocaine to the undercover police officer but offered as his *sole* defense the factual

---

[1] In *Bilikam, supra,* the reviewing appellate court, in an opinion authored by Judge Moyer, found that the nature of what would have been testified was apparent and that both the parties and the trial court "were aware that defendant would have testified to an agreement" (*id.* at 305) that was the subject of the action.

[2] The federal rule, unlike Ohio's, applies equally to cross-examination. The following analysis from the Sixth Circuit's decision in *Callahan, supra,* at 737-738, is nevertheless both pertinent and instructive: "There was no offer of proof in the record to show what appellant's counsel would have elicited from Kimble through his inquiry into K & B's past contacts with other unions. * * * We do not condone the perfunctory way in which appellant's counsel stated the purpose of his question and then simply let the matter drop once an adverse ruling had been made. Such treatment of the issue at trial tends to belie appellant's fervent contentions before this court that the past dealings of K & B with other unions constituted the essence of his defense.

"Nevertheless, we are persuaded to find that appellant's *counsel did provide an explanation of the purpose* of his question sufficient to preserve the issue. Appellant's counsel did state to the court that he was attempting to determine if Kimble "had been approached in this situation many times before," and that such evidence "would bear upon his *mental state.*" In view of the fact that appellant's counsel *was seeking facts peculiarly within the knowledge of the witness* he was cross-examining, and in view of the fact that *inquiry into this area was cut off at the threshold,* we believe that counsel's failure to more adequately apprise the trial court of the testimony he hoped to elicit from Kimble was not fatal to this appeal.

"The judgment of the District Court is reversed, *and the cause is remanded for a new trial.*" (Emphasis added.)

assertion that he had been entrapped by the state. In paragraph one of the syllabus in *Doran, supra,* we recognized the parameters of this defense by holding that "[t]he defense of entrapment is established where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute." (Followed in *State* v. *Italiano* [1985], 18 Ohio St. 3d 38, 42.)

As such, the essence of the entrapment defense is the accused's lack of predisposition to commit the crime. Furthermore, to ensure fairness in the guilt-determination process we admonished in *Doran* at 192 that "* * * evidence relevant to predisposition should be freely admitted * * *."

In *Doran* we set forth the following non-exhaustive list of factual matters which are certainly "* * * relevant on the issue of predisposition: (1) the accused's previous involvement in criminal activity of the nature charged, (2) the accused's ready acquiescence to the inducements offered by the police, (3) the accused's expert knowledge in the area of the criminal activity charged, (4) the accused's ready access to contraband, and (5) the accused's willingness to involve himself in criminal activity. Under this approach, the evidence on the issue of an accused's predisposition is more reliable than the evidence of the nature of inducement by police agents under the objective test." *Id.*

In this case, defense counsel stated that since the police informant (Kelly Smith) could not be located for examination at trial, Gilmore was going to recount their conversations during which he was entrapped by the state. As the appellate court opinion points out, the trial court was certainly aware of Gilmore's alleged affirmative defense. Additionally, the entire trial transcript is but some one hundred thirty pages and indicates that the defense only called two witnesses, other than appellee, and the thrust of the questioning during the defense's case in chief was to show, *inter alia,* that the informant had a past relationship with the police, that she induced Gilmore to sell drugs, and that Gilmore did not usually sell drugs. Lastly, defense counsel admitted in his brief opening remarks that the transaction took place but asserted, as appellee's defense, that he was "induced to commit the crime, that the activity of the State permeates this entire incident, that the incident was planned by the State, conceived by the State, that they persuaded, encouraged, induced the defendant to carry this act out."

Defense counsel then outlined for the court what appellee would seek to demonstrate at trial:

"I believe the evidence will show that there was enticement here, big money, friendship, little risk, and that had that not been provided, this defendant would not have engaged in that activity. I believe also there was fraud and trickery, false statements that were made by the State of Ohio and that that is the kind of conduct which is not proper and, therefore, if, in fact, this incident occurred or a crime occurred, the defendant should be

excused from that. The activity of the State permeates this entire event. We have the State conceiving the event, encouraging it, trying to persuade the defendant and this involved in the discussion of it and for that reason I believe the defendant should be found, we would submit, not guilty after the evidence is presented." See, also, the questions asked during appellee's direct examination set forth in the majority opinion.[3]

Since Kelly was not present at trial, it was hardly speculative of the appellate court to find that the defense sought to prove these things through the only relevant defense evidence advanced at trial, Gilmore's own testimony.

The majority's unfortunate conclusion that the improper exclusion of appellee's evidence offered in support of his defense against the charges was harmless, because the error did not affect a "substantial right," is clearly in error.[4] The concept of disregarding errors which do not "affect the substantial rights of the adverse party" has long been followed by the courts of this state. *E.g., Elser* v. *Parke* (1943), 142 Ohio St. 261, 273 [27 O.O. 204]. In this regard, it has been observed in one leading treatise that Fed. R. Evid. 103 is but "* * * a codification of the basic rules of offering evidence and objecting to admission of evidence. In order to preserve an objection for appeal, ordinarily a party must make a specific, as opposed to a general, objection. If, however, a specific ground is apparent, no absolute requirement of specification will be imposed. Once an objection is made, if the Trial Judge excludes evidence, the party offering the evidence must make an offer of proof. This is usually nothing more than a relation of the substance of the evidence in order that the Appellate Court may know what evidence would have been offered but for the objection. The

---

[3] As such, defense counsel set forth his intention to present relevant evidence bearing on the issues concerning predisposition set forth in *Doran, supra.*

[4] I suspect that the majority may have fallen prey to the trap presented by the seemingly inconsistent interworkings of Evid. R. 103(A), effect of erroneous ruling, and Evid. R. 103(D), plain error. Saltzburg & Redden's Evidence Manual, *infra,* explains the dichotomy as follows, at 17-18:

"It is interesting that the term 'substantial right' is used with respect to both harmless and plain error. The Rule may thus be contradictory. On the one hand it suggests that there is a penalty for failing either to object or to make an offer of proof, i.e., an Appellate Court will not consider any error on appeal unless substantial rights are affected. But, if any error is harmless unless substantial rights are affected, it is not clear what is gained by making a timely objection at trial. Of course, if no offer of proof is made, it may be difficult to ever demonstrate a potential abuse of substantial rights, since the Appellate Court may never know what evidence might have been offered. Aside from this, the contradiction remains. The answer may lie in the fact that the draftsmen of the Rule never attempted to set forth precise tests for harmless and plain error. For example, the rule adopted by the Supreme Court is that any constitutional error must be harmless beyond a reasonable doubt in a criminal case. This is recognized in the Advisory Committee Note but not in the text of the Rule, even though some of the responses to the Congress with respect to the Rules requested that a specific standard be set forth. To the extent that Courts will lay down standards for harmless and plain error on a case-by-case basis, there may prove to be no inconsistency." (Footnotes omitted.)

Rule sensibly states that Trial Judges should attempt to conduct proceedings relating to the determination of the admissibility of evidence outside of the presence of the jury.

"* * *

"The Rule attempts to incorporate both the concepts of harmless and plain error. If an error has not resulted in damage to the complaining party, it may be deemed harmless and a new trial need not be had. On the other hand, even *if a* timely objection or *an offer of proof is not made, if a grave injustice might result from a serious trial error, the Appellate Court may still order a new trial.*" Saltzburg & Redden, Federal Rules of Evidence Manual (4 Ed. 1986) 15-17. (Emphasis added, footnotes omitted.)

Also of guidance are the remarks of one noted commentator whose examination of Ohio's Rules of Evidence and interpretation of case law led to a conclusion that "[e]rror may be divided into four classes:

"1. HARMLESS ERRORS. These are errors which are brought to the court's attention, but which do not provide grounds for reversal because they do not affect substantial rights and are not prejudicial.

"2. PRESERVED ERRORS. These are mistakes which are brought to the trial court's attention, and which affect substantial rights; being prejudicial, they provide grounds for reversal.

"3. WAIVABLE ERRORS. These are prejudicial errors which may or may not have been brought to the court's attention, but which were in fact or in contemplation of law, waived prior to appeal, and which, because of waiver, do not provide grounds for appeal.

"4. PLAIN ERRORS. These involve errors which are not brought to the trial court's attention but which affect substantial rights, are deemed too fundamental to be waived in contemplation of law, and may be noticed on appeal. * * *" Palmer, Ohio Rules of Evidence Rules Manual (1984), at 12.

As applied to this case, today's majority essentially decrees that the complete deprivation of an accused's only affirmative defense by a trial court, although preserved as error, falls into the "harmless" category of errors. To the contrary, considerations of reason, logic and justice command a holding that the trial court's errant evidentiary ruling was in fact a "preserved error" justifying reversal and remand to the common pleas court for a new trial.

In this regard, the instant appellate court's persuasive analysis accurately observed as follows:

"Critical to that [entrapment] defense were the statements made to him by Kelly Smith. The *question for the factfinder* was not whether these statements were true but what effect, if any, they had upon the state of mind of Gilmore. As such, they were not hearsay.

"* * *

"We fully appreciate the fact that the trial court understood the gist of Gilmore's defense. *It is very possible that had the trial court, who was the*

*factfinder, heard the specific statements attributed by Gilmore to Kelly Smith, the outcome would not have been different.* It is entirely possible that the trial court may have chosen to disbelieve Gilmore's testimony as to what Smith said to him, with or without rebuttal evidence by the State. It is also possible that the trial court could have concluded that regardless of what Kelly Smith said to him, Owen Gilmore nevertheless failed to prove his lack of predisposition to sell cocaine.

"However, because it was encumbent [*sic*] upon Gilmore to prove lack of predisposition by the greater weight of the evidence, we believe that the trial court, in excluding the statements allegedly made by Kelly Smith, improperly handicapped Gilmore in presenting evidence of entrapment. *We cannot say the error was harmless.*" (Emphasis added in part.)

This application is consistent with our ruling in *Italiano, supra*, at 43 which states there must be "* * * sufficient probative evidence to support the trial court's finding that defendant was predisposed to commit the offense * * * and that the criminal design was not planted in his mind by the state."

Until today this court has exhibited a staunch "* * * unwillingness to hide behind the doctrine of harmless error when the determination that error has been committed is inescapable." *State* v. *Ferguson* (1983), 5 Ohio St. 3d 160, 166 at fn. 5. While I may assent to the majority's cavalier observation that the record before this court contains "overwhelming proof of defendant's guilt," I fear that the majority has asked and answered the wrong question. In this instance, our query is not whether the state has shown that appellee sold drugs to the police. Appellee does not dispute that the state's case is strong relative to this issue. Rather, the question remaining for the fact-finder is whether appellee's evidence demonstrates by a preponderance that the police implanted in the mind of an innocent person the disposition to commit the offense. See R.C. 2901.05(A). Accordingly, appellee's affirmative defense hinged on his ability to convince a trier of fact of his innocence by reason of entrapment. His testimony in this regard was improperly excluded at trial.

In *Doran, supra,* we held at 194 that the mere failure of the trial court to properly allocate "the burden of proof on entrapment" in its jury instruction constituted "prejudicial error" justifying a new trial. Surely, it is inconsistent as well as senseless for this court to perfunctorily state today that a far more substantial trial error, resulting in the complete exclusion of an accused's evidence, where he has the burden, bearing on an entrapment defense, is mystically "harmless." I emphatically dissent and would order the cause to be remanded to the trial court for a new trial.