OPINION.
Defendant-appellant Gregory Wetherall has taken the instant appeal from his conviction, in a trial before the court, for domestic violence in violation of R.C. 2919.25. He advances on appeal four assignments of error, in which he challenges various evidentiary rulings of the trial court and the weight and sufficiency of the evidence adduced at trial to support his conviction. Upon our determination that the trial court improperly excluded evidence relevant to the defendant's claim of self-defense, we reverse the judgment of conviction entered below.
The defendant was charged with domestic violence in the wake of a physical altercation with his wife, Caroline Wetherall, in the early morning hours of August 25, 1999. The defendant and his wife each testified at trial, and each presented sharply divergent versions of the events of that morning and the preceding evening.
Both combatants testified that, over the course of the evening and into the early morning hours preceding their row, they had, in the company of another couple, consumed various alcoholic beverages at three different drinking establishments and at the other couple's home. Mrs. Wetherall admitted on cross-examination that she had a history of, and had undergone treatment for, alcohol and substance abuse. She further conceded that, between the hours of 7:00 p.m. and 3:00 a.m. on the evening and morning in question, she had consumed a total of three mixed drinks. The defendant insisted, to the contrary, that between 7:30 p.m., when he had arrived home from work, and 2:00 a.m., when he and his wife had returned home from their night on the town, he had seen his wife consume a total of four mixed drinks and eight beers, along with an unknown portion of the can of beer that she threw against the basement wall in anger after they had returned home.
Mrs. Wetherall testified that it was her husband, and not she, who had opened another beer when they returned home, and that he had then resumed what had become a continuing course of "harass[ment]" of her over a past, interracial relationship. She stated that, when she failed to offer a satisfactory response, her husband's verbal harangue became a brutal physical assault, which progressed, over the course of two hours, from the basement, through the first floor of their house, and on to their second-floor bedroom, and which left her, for an unknown period of time, unconscious and, in the end, with a black eye and assorted bruises and abrasions on her arms, hands, shoulders, face, legs, hips and neck.
The defendant testified, to the contrary, that after they had arrived home, he changed clothes and went to the garage to check their car's electrical system for a recurring problem that appeared to have resurfaced on the ride home. When he told his wife that the car's electrical problems and her failure to control her drinking made him reluctant to leave that morning on a planned vacation to the beach, she became incensed and threw her beer against the wall. Resisting this provocation, the defendant went to bed, only to be awakened a short time later by his wife's report that she had lost her contact lenses and needed a pair of his. When the defendant saw on the bathroom sink eight opened and empty contact-lens containers, he refused to give her his remaining pair, and she struck him with her hand.
There then ensued, according to the defendant, a series of comings and goings (on foot, because his wife had taken his wallet and keys), with loud discussions between the couple about the future of their marriage, interspersed with violent outbursts by Mrs. Wetherall that she directed initially at various household objects. She turned her rage upon the defendant, however, when she found him on the telephone in the bedroom seeking directory information to cancel their reservations at the beach. Thus provoked, she struck him on the side of the head with a beer bottle. When the defendant grabbed her arms to prevent a subsequent blow, she bit into his hand and wrist. In an attempt to disengage her teeth from his arm, the defendant "grabbed" his wife's hair, throat, shoulder and clothing. He finally succeeded in breaking his wife's grip by "push[ing]" her face. As he retreated, she grasped his T-shirt, and he slipped out of it and down the stairs. As he was poised to leave the house through the garage, the defendant heard his wife fall down the steps, through the child-safety gate at the bottom, and through the open doorway to the garage. She then picked up the gate and heaved it at him, "clipp[ing]" his heel in the process.
The prosecution offered into evidence an audiotape of a "911" call made by the directory-information operator to whom the defendant had been speaking when his wife allegedly struck him with the beer bottle. The audiotape reflected that the impetus for the directory-information operator's call was his concern for the safety of the young woman whom he had heard in the background "crying" and "telling him to get away from her."
The Hamilton County sheriff's deputy who was then dispatched to the Wetheralls' house also testified. He stated that he arrived at the house at approximately 5:15 a.m., and that, when he received no response to his knock, he wandered the grounds for ten to twenty minutes, until he saw Mrs. Wetherall through a window and motioned for her to open the door.
Mrs. Wetherall testified that she had not responded to the deputy's knock because her husband had held her captive and silenced in the garage. And she attributed her delay in admitting the deputy after the defendant had fled from the house through the garage door to her need to substitute other clothes for the "bloodied" dress that the defendant had "torn from her" during their altercation.
The deputy elicited a statement from Mrs. Wetherall and photographed her injuries and the damaged areas of the house. He also summoned emergency medical personnel, who recommended that Mrs. Wetherall be treated at the hospital, but she declined. Approximately one hour later, the defendant was apprehended a short distance from the house.
Photographic evidence and, for the defendant's part, medical records confirmed the injuries that each combatant claimed to have sustained. The couple's drinking companions, in their testimony at trial, essentially confirmed the defendant's characterization of his wife's alcohol consumption, her consequent state of intoxication, and the transforming effect of her alcohol consumption on her demeanor. On the other hand, the deputy sheriff testified that, in the course of his dealings with Mrs. Wetherall between the hours of 5:30 and 6:00 a.m., he had noted the odor of alcohol about her, but had found her to be coherent and comprehending and not substantially impaired.
 I.
In his first assignment of error, the defendant challenges the trial court's exercise of its discretion in excluding evidence of his wife's violent character, offered in the form of opinion testimony, testimony to her reputation for violence, and testimony concerning prior instances of violent conduct, in support of his claim that he had acted in self-defense. This challenge is well taken.
The defendant testified at trial that he had never struck his wife or any other woman. He insisted that it was, instead, his wife who had in the past resorted to violence when angered, and he cited two specific incidents.
The first incident occurred behind their closed bedroom door, but within earshot of the defendant's parents, who were staying with the couple. The defendant asserted, and produced a photograph taken by his father to show, that Mrs. Wetherall, angered by his expression of displeasure with her drinking and smoking during her pregnancy, had punched him and scratched him around his eye and on his neck and chest.
The second incident occurred in January 1999, while the defendant was in the midst of a telephone conversation with a friend. The defendant testified that his wife, prompted by his comment on the appearance of a woman on television, had thrown a glass that had hit him in the back of the head, shattered, and cut his back. He again produced photographic evidence of his injury.
Mrs. Wetherall, on cross-examination, admitted that she had inflicted upon the defendant the wounds portrayed in the photographs. But she maintained that she had never struck the defendant in other than self-defense.
The defendant's father testified at trial and substantially confirmed the defendant's testimony concerning the first incident. He added that, in a subsequent conversation with his daughter-in-law, she had admitted to him that she had acted out of anger, and that, when angered, she became "very physically aggressive."
The trial court also admitted, over the prosecution's objection, testimony by the defendant's friend, who had heard over the telephone the glass-throwing incident. The friend further testified that, in a subsequent telephone conversation with Mrs. Wetherall, she had admitted to him that she had thrown the glass and had done so in anger.
The defense was less successful in its attempts to elicit at trial evidence of Mrs. Wetherall's propensity for violence in her dealings with others. The trial court sustained the prosecution's objections to defense counsel's inquiries, on cross-examination of Mrs. Wetherall, into whether, over the course of her five-year live-in relationship with one Carlos Wilkerson, she had "assault[ed] Mr. Wilkerson * * * such that he was required to call the police and get assistance," and whether "Mr. Wilkerson, to [her] knowledge, [had] discuss[ed] [their] relationship with [the defendant]." Defense counsel argued that the testimony sought to be elicited "[went] to the * * * claim of self-defense of [how the defendant] was aware" of his wife's violent propensities. Counsel thereupon proffered the expected substance of "the cross-examination concerning Carlos Wilkerson, as it relate[d] to the prosecuting witness's prior assaultive behavior, prior violent behavior, of which the defendant * * * was fully aware * * *, which [were] communicated to him by Carlos Wilkerson, * * * as it relate[d] to the defendant's well-founded fear that the prosecuting witness contrives stories, becomes intoxicated and/or abuse[s] * * * drugs, and makes her[self] out to be a so-called victim."
The defense called Wilkerson to the stand. The trial court sustained the prosecution's objections to defense counsel's request that Wilkerson "describe [his] relationship" with Mrs. Wetherall and to counsel's inquiry into whether, over the course of their relationship, Wilkerson had "ha[d] occasion to become involved in an assaultive-type behavior." After Wilkerson testified that his first contact with the defendant had been during a telephone conversation after the events of August 25, the court sustained the prosecution's objection to defense counsel's request that Wilkerson provide the details of his response to the defendant's inquiry, during their telephone conversation, into "what type of person [Mrs. Wetherall] was." Defense counsel argued that such evidence was admissible because it "goes to [the defendant's] knowledge of [his wife's] violent tendencies." The court pointed out, however, that Wilkerson "ha[d] testified [that] he [had] never talked to the defendant prior to this incident"; thus, the court reasoned, such testimony "is not testimony [about facts] known to the defendant[,] * * * [but testimony] about what the defendant [had] learned after the alleged self-defense." Finally, without elaboration, the court sustained the prosecution's objection to defense counsel's attempt to elicit from Wilkerson his "opinion, based on five years of relationship with Caroline Wetherall, of Mrs. Wetherall's [reputation] in the community for peacefulness."
The defense of self-defense may exonerate an accused's admitted use of force. To establish self-defense in the use of nondeadly force, the accused must show that (1) he was not at fault in creating the situation giving rise to the affray, (2) that he reasonably believed that he needed to use force to defend himself against the imminent use of unlawful force by the victim; and (3) that the force used was not likely to cause death or great bodily harm. In re Maupin (Dec 11, 1998), Hamilton App. No. C-980094, unreported. Self-defense is an affirmative defense. Therefore, the accused bears the burden at trial of production and of proving the essential elements of his claim of self-defense by a preponderance of the evidence. See R.C. 2901.05(A).
On appeal, the defendant contends that the trial court abused its discretion by excluding testimony concerning his wife's violent character, when this evidence was admissible to show (1) that the he did not create the situation giving rise to the affray, i.e., that he was not the aggressor in their altercation, and (2) that his state of mind was such that he was acting upon a reasonable belief that he needed to use force to defend himself against his wife's use of unlawful force. We agree.
 A.
We address preliminarily the matter of our standard of review. We begin with the general proposition that evidentiary rulings are committed to the sound discretion of the trial court and will provide a basis for reversal only upon an abuse of that discretion that amounts to prejudicial error. See State v. Lowe (1994), 69 Ohio St.3d 527, 532,634 N.E.2d 616, 620; Crim.R. 52(A).
To preserve for appeal any error in the exclusion of evidence, the proponent of the evidence must show that the exclusion of the evidence affected a substantial right. Additionally, if the evidence was excluded on direct examination of the witness, the substance of the excluded evidence must either have been made known to the trial court by proffer or have been apparent from the context within which the questions were asked. See Evid.R. 103(A)(2); State v. Gilmore (1986), 28 Ohio St.3d 190,503 N.E.2d 147, syllabus.
In the proceedings below, the trial court's exclusion of evidence of Mrs. Wetherall's violent character, if in error, must be said to have affected a substantial right of the defendant, when it restricted his ability to sustain his burden of going forward with evidence of, and of proving by a preponderance of that evidence, the affirmative defense of self-defense. See R.C. 2901.05. And although defense counsel failed to proffer the substance of the character evidence excluded on direct examination of Wilkerson, counsel did proffer the substance of the character evidence sought to be elicited on cross-examination of Mrs. Wetherall. That proffer, in the context of the record as a whole, makes apparent the substance of the evidence excluded on direct examination of Wilkerson. Thus, any error in the exclusion of this evidence was preserved for our review.
Our analysis also implicates the following rule announced by the supreme court in paragraph one of its syllabus in State v. Peagler
(1996), 76 Ohio St.3d 496, 668 N.E.2d 489:
 While an appellate court may decide an issue on grounds different from those determined by the trial court, the evidentiary basis upon which the court of appeals decides a legal issue must have been adduced before the trial court and have been made a part of the record thereof.
 The exchanges at trial between counsel and the court plainly demonstrate that their debate focused exclusively on the admissibility of the excluded evidence to prove the second element of the defendant's claim of self-defense, i.e., that his state of mind was such that he was acting upon a reasonable belief that he needed to use force to defend himself against his wife's use of unlawful force. Defense counsel did not argue, and the trial court did not consider, the admissibility of the excluded evidence to prove the first element of the defense, i.e., that Mrs. Wetherall, rather than the defendant, was at fault in creating the situation giving rise to the affray. Nevertheless, the trial court had before it an evidentiary basis upon which it might have determined, as a matter of law, the admissibility of evidence of Mrs. Wetherall's propensity for violence to show that she was the aggressor in the affray. We are, therefore, not precluded from considering this issue on appeal.
 B.
Turning to the merits of the challenge presented on appeal, we note that the Supreme Court of Ohio addressed the matters of when and how character evidence may be offered in support of a claim of self-defense in two decisions that preceded the adoption the Rules of Evidence. InMarts v. State (1875), 26 Ohio St. 162, the accused was charged with murder when a stone that he had thrown struck and killed the victim. Marts asserted that he had acted in self-defense. At trial, he adduced evidence showing that he had hurled the stone after the victim had drawn a pistol and had verbally threatened him, and that he had acted with knowledge of previous threats upon his life made by the victim. The trial court excluded evidence offered to prove that the victim "was a man of violent, vicious, and dangerous character." Id. at 163. The Supreme Court of Ohio held that the trial court had erred in excluding such evidence to the extent that the victim's character was known to Marts, because the evidence tended to show Marts's state of mind at the time of his offense. The court declared, however, that the evidence "could not be considered or used for the purpose of * * * showing that [Marts] was assaulted, attacked, or menaced by the [victim]." Id. at 168.
In State v. Roderick (1907), 77 Ohio St. 301, 82 N.E. 1082, the court qualified its holding in Marts with respect to the methods of proving character. The court agreed with the general proposition set down inMarts, that an accused "defending on the ground of self-defense * * * may prove that the [victim] was a person of violent and dangerous character, [if] such character of the [victim] was known to [the accused] at the time of the affray." But the court limited "the mode of proving the violent and dangerous character of the [victim to] showing that such was the general reputation of the [victim] in that community." The court declared that the accused "cannot be permitted to prove, for the purpose of showing reasonable ground for apprehension of bodily injury or loss of his life, particular instances of violence or viciousness on the part of the [victim]." Id., syllabus.
The Rules of Evidence offer a broader range of purposes for which and methods by which character evidence may be adduced. Evid.R. 404(A) provides the general rule that "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion." To this general proscription against the use of propensity evidence to demonstrate conduct conforming to the propensity, the rule provides certain exceptions. In a criminal prosecution for an offense other than rape, gross sexual imposition or prostitution, Evid.R. 404(A)(2) permits the accused to offer "[e]vidence of a pertinent trait of character of the victim of the crime."
Evid.R. 405 prescribes the methods by which character may be proved. In any instance in which character evidence is admissible, proof of character may be offered "by testimony as to reputation or by testimony in the form of an opinion." Evid.R. 405(A). Proof of character may be offered in the form of "specific instances of conduct" on cross-examination, when the conduct is "relevant." Evid.R. 405(A). And proof of character may be presented in the form of "specific instances of conduct" on direct examination, when "character or a trait of character of a person is an essential element of a charge, claim, or defense." Evid.R. 405(B).
The Supreme Court of Ohio has yet to address the question of how the Rules of Evidence function when a criminal accused offers evidence concerning the victim's violent character in support of his claim of self-defense. This court, in its post-Rules decision in State v. Lane
(1988), 48 Ohio App.3d 172, 549 N.E.2d 193, modified on other grounds (1988), 49 Ohio App.3d 158, 551 N.E.2d 994, held that the trial court properly excluded evidence of the victim's juvenile delinquency record, because such evidence was "immaterial to [the accused's] claim of self-defense" in the absence of some demonstration that the accused had, prior to his offense, been aware of the victim's record. Id. at 174,549 N.E.2d at 195. To the extent that it lacks citation to either the Rules of Evidence or prior case authority and displays no apparent consideration of the excluded evidence's admissibility for the alternative purpose of proving that the victim was the aggressor, our decision in Lane provides little guidance. And, to the extent that Lane
might be read to provide a rule contrary to that compelled by the Rules of Evidence, it is overruled.
The decisions of those appellate districts that have addressed these matters in greater detail are instructive. Evid.R. 404's general proscription against propensity evidence offered to prove conforming conduct would appear not to apply to evidence concerning the victim's violent character offered to prove the accused's state of mind at the time of his offense, because the evidence is not being offered "for the purpose of proving that [the victim] acted in conformity therewith on [that] particular occasion." The districts have generally concurred in this assessment and have admitted, for the purpose of proving the accused's state of mind at the time of his offense, testimony by the accused and by corroborating witnesses concerning the victim's reputation for violence and specific instances of violence by the victim, provided that the testimony is shown to be relevant by proof that the accused had prior knowledge of the victim's reputation or conduct. See, e.g., Statev. Douglas (Mar. 16, 1999), Mahoning App. No. 94 CA 214, unreported;State v. Baker (1993), 88 Ohio App.3d 204, 208, 623 N.E.2d 672, 674-675;State v. Ramey (Sept. 19, 1986), Ashtabula App. No. 1251, unreported; see, also, State v. Barnes (Sept. 14, 2000), Portage App. No. 98-P-0052, unreported (noting that evidence of the victim's prior violent conduct offered to show the accused's state of mind is subject to exclusion on the ground of relevance if the accused was unaware of the conduct);Cleveland v. Hill (1989), 63 Ohio App.3d 194, 197-198, 578 N.E.2d 509,511 (holding that corroborating evidence of a prior act of violence by the victim against the accused, although admissible to show the accused's state of mind, was properly excluded as cumulative).
The districts have also generally admitted, pursuant to Evid.R. 404 and 405, opinion and reputation evidence and, on cross-examination, specific-acts evidence demonstrating the victim's propensity for violence, for the purpose of proving that the victim was the aggressor. See, e.g., State v. Cuttiford (1994), 93 Ohio App.3d 546, 554,639 N.E.2d 472, 478; Baker, supra at 210, 623 N.E.2d at 676; Ramey,supra. And these courts have acknowledged the rather obvious proposition that, when evidence of a propensity for violence is offered to show that the victim was the aggressor, rather than to show the accused's state of mind, the proponent of the evidence need not demonstrate that the accused had prior knowledge of this character trait. See, e.g., State v. Marsh
(1990), 71 Ohio App.3d 64, 593 N.E.2d 35; State v. Schmidt (1979),65 Ohio App.2d 239, 243, 417 N.E.2d 1264, 1268.
The districts have split, however, on the question of whether specific-acts evidence demonstrating the victim's propensity for violence may be adduced on direct examination to show that the victim was the aggressor.[1] As we noted supra, Evid.R. 405(B) provides that "character or a trait of character" may be proved by "specific instances of conduct" only when "character or a trait of character * * * is an essential element of a * * * defense." Those districts that have held that specific-acts evidence showing the victim's propensity for violence is not admissible to show that the victim was the aggressor have done so on the ground that the victim's propensity for violence is not an element of self-defense. See, e.g., State v. Banks (June 15, 2000), Cuyahoga App. No. 76271, unreported; State v. Busby (Sept. 14, 1999), Franklin App. No. 98AP-1050, unreported; State v. Weston (July 16, 1999), Washington App. No. 97CA31, unreported; Cuttiford, supra at 555,639 N.E.2d at 478; State v. Burbridge (Dec. 12, 1994), Butler App. No. CA94-01-023, unreported; Baker, supra at 211, 623 N.E.2d 676; State v.Cosey (Mar. 28, 1988), Marion App. No. 9-86-29, unreported.
In contrast, those districts that have held that such evidence is admissible have criticized their counterparts for reading Evid.R. 405(B) too narrowly and have, either expressly or essentially, pursued the following line of reasoning offered by the Court of Appeals for Portage County in State v. Barnes (Sept. 14, 2000), Portage App. No. 98-P-0052, unreported:
 To be successful on a claim of self-defense, a defendant must first be able to show that he was not at fault in creating the situation leading to the affray. Logically, one would assume that if the victim has a propensity for violence, evidence demonstrating such propensity would be relevant as to the question of who started the fracas. In a sense, then, the victim's propensity for violence is an essential element of the defendant's defense, and evidence to that effect should be admissible.
 See Willard v. Semer (Nov. 17, 2000), Huron App. No. H-99-031, unreported[2]; see, also, State v. Gibbons (Mar. 30, 2000), Stark App. No. 1998CA00158, unreported; Ramey, supra; Schmidt, supra.
In the proceedings below, the trial court admitted evidence of specific instances of conduct evincing Mrs. Wetherall's propensity for violence, presented in the form of testimony on cross-examination of Mrs. Wetherall, testimony on direct examination of the defendant, and corroborative photographic and testimonial evidence offered by the defendant's father and his friend. To the extent that the defendant knew of these instances of violent conduct before the alleged offense, proof of this propensity was properly admitted as relevant to the defendant's claim of self-defense in that it tended to show that he was acting upon a reasonable belief that he needed to use force to defend himself against his wife's use of force. See Evid.R. 401 and 402.
Proof of Mrs. Wetherall's propensity for violence was also relevant to the defendant's claim of self-defense in that it permitted the inference that she had acted in conformity with that propensity on the date in question and that she, rather than he, had been the aggressor in their altercation. Thus, her propensity for violence was a "pertinent trait of character," and evidence probative of this propensity was admissible at trial in the form of opinion testimony, reputation testimony, and, on cross-examination, specific-acts testimony, for the purpose of showing that Mrs. Wetherall was the aggressor. See Evid.R. 404(A)(2) and 405(A).
In the proceedings below, the trial court excluded evidence of Mrs. Wetherall's propensity for violence offered in the form of specific-acts testimony, on cross-examination of Mrs. Wetherall, and opinion and reputation testimony on direct examination of Wilkerson. We hold that the court abused its discretion in doing so.
The court also precluded defense counsel's attempts to elicit at trial evidence of Mrs. Wetherall's propensity for violence in the form of specific-acts testimony on direct examination of Wilkerson. On this question, we are compelled by the force of the logic underlying the decision of the Eleventh Appellate District in Barnes to conclude that this too constituted an abuse of discretion. See Evid.R. 404(A)(2) and 405(B).
Our conclusion that the trial court abused its discretion in excluding this evidence does not, however, end our inquiry. An appellate court may not reverse a judgment on the basis of an error that is "[h]armless,"i.e., an error that "does not affect [a] substantial right" of the accused. Crim.R. 52(A).
In the proceedings below, the trial court's exclusion of evidence probative of Mrs. Wetherall's propensity for violence severely restricted the defendant's ability to establish by the requisite degree of proof that he had acted in self-defense. The court's exclusion of this evidence cannot be said to have been harmless, when, upon the record before us, we are unable to conclude that the admission of such evidence would not have led to a contrary outcome. See Gilmore, supra at 193,503 N.E.2d at 150-151 (citing State v. Williams [1983], 6 Ohio St.3d 281,452 N.E.2d 1323, paragraph six of the syllabus, to hold that the improper exclusion of evidence was harmless, upon its determination "that even if the excluded testimony had been admitted, such evidence would not negate the overwhelming proof of defendant's guilt"). Accordingly, we sustain the first assignment of error.
 II.
Our disposition of the first assignment of error renders moot the challenges presented in the second and third assignments of error, as well as that portion of the fourth assignment of error that challenges the balance struck by the trial court in weighing the evidence adduced at trial. We, therefore, do not reach the merits of those challenges. See App.R. 12(A)(1)(c).
 III.
That leaves for our disposition that portion of the fourth assignment of error that challenges the legal sufficiency of the evidence to support the conviction. Upon the evidence adduced at trial, reasonable minds could have reached different conclusions as to whether the state had sustained its burden of proving each element of domestic violence beyond reasonable doubt. See State v. Thomas (1982), 70 Ohio St.2d 79,434 N.E.2d 1356. We, therefore, overrule, in relevant part, the fourth assignment of error.
 IV.
Having thus determined that the trial court materially prejudiced the defendant by improperly excluding opinion, reputation and specific-acts testimony concerning Mrs. Wetherall's violent proclivities, we reverse the judgment of conviction entered below and remand this case for further proceedings consistent with law and this Opinion.
 ___________________ Shannon, Judge.
 Gorman, P.J., and Painter, J., concur.
Raymond E. Shannon, retired, from the First Appellate District, sitting by assignment.
[1] On December 6, 2000, the Supreme Court of Ohio determined that a conflict had emerged among the districts on this question. The court cited as "conflict cases" the appellate court decisions in State v.Barnes (Sept. 14, 2000), Portage App. No. 98-P-0052, unreported; Statev. Busby (Sept. 14, 1999), Franklin App. No. 98AP-1050, unreported; Statev. Weston (July 16, 1999), Washington App. No. 97CA31, unreported; Statev. Douglas (Mar. 16, 1999), Mahoning App. No. 94 CA 214, unreported;State v Scott (Sept. 7, 1995), Cuyahoga App. No. 67148, unreported; andState v. Cuttiford (1994), 93 Ohio App.3d 546, 639 N.E.2d 472. The court thus ordered that the record of the appeal in Barnes be certified for review and determination of the issue of whether an accused "asserting self-defense * * * can * * * introduce evidence of specific violent acts committed by the victim in the past to show that the victim was the aggressor." State v. Barnes (Dec. 6, 2000), 90 Ohio St.3d 1482,738 N.E.2d 1255.
[2] The supreme court, on review of an order certifying a conflict inWillard v. Semer (Nov. 17, 2000), Huron App. No. H-99-031, unreported, determined that the decision there did not provoke a conflict among the districts within the meaning of S.Ct.Prac.R. IV(2)(B) and dismissed the appeal. See Willard v. Semer (2001), 91 Ohio St.3d 1427, 741 N.E.2d 891