[Cite as *State v. Wilson*, 2023-Ohio-419.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | Case No. 22 CA 00024 |
| WILLIAM R. WILSON | |
| Defendant-Appellant | O P I N I O N |


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Court of Common Pleas, Case No. 2021CR00597 |
| JUDGMENT: | Affirmed in part; Reversed in part and Remanded |
| DATE OF JUDGMENT ENTRY: | February 10, 2023 |


APPEARANCES:

For Plaintiff-Appellee

WILLIAM C. HAYES
PROSECUTING ATTORNEY
ROBERT N. ABDALLA
ASSISTANT PROSECUTOR
20 South Second Street, 4th Floor
Newark, Ohio 43055

For Defendant-Appellant

BRIAN A. SMITH
BRIAN A. SMITH LAW FIRM LLC
123 South Miller Road
Suite 250
Fairlawn, Ohio 44333

*Wise, J.*

{¶1} Appellant William R. Wilson appeals his conviction and sentence entered in the Licking County Court of Common Pleas. Appellee is State of Ohio. The relevant facts leading to this appeal are as follows.

## STATEMENT OF THE FACTS AND CASE

{¶2} On November 24, 2021, the Licking County Grand Jury returned an indictment against Appellant charging him with Felonious Assault in violation of R.C. §2903.11(A)(2). At his arraignment, Appellant entered a plea of not guilty.

{¶3} On February 15, 2022, the matter proceeded to a jury trial.

{¶4} At trial, Angelo Davis testified that on the evening of October 26, 2021, he was at Central City Bar celebrating his wife's thirty-second birthday with her family. Mr. Davis stepped outside to have a cigarette and upon returning he saw Appellant and another man yelling threats at his wife's brothers. The threats continued for fifteen to twenty minutes.

{¶5} When Mr. Davis and his family were trying to leave they asked the bouncer for assistance in the situation, as they did not feel safe leaving the bar with the two men yelling threats. The bouncer indicated the Appellant and his group would not bother Mr. Davis and his family if they left and went to their car.

{¶6} When Mr. Davis and his family started to leave, Appellant approached and threatened the group with a knife. Mr. Davis's wife asked the bouncer for assistance but the bouncer just turned his back.  Mr. Davis did not have a weapon and never threatened anyone.

{¶7} Mr. Davis put himself between Appellant's associate, Demetrius Hatem, and his wife and family after seeing the knife. The fight began when Mr. Hatem flinched at Mr. Davis as if to throw a punch. About twenty seconds into the fight, Mr. Davis was stabbed by Appellant in his back. His legs gave out, and he went to the ground. Someone yelled for him to get up, and he had a difficult time because Mr. Hatem was holding him down by the hair.

{¶8} Mr. Davis testified he eventually got up and was pushing his way out of the fight when he was stabbed again by Appellant, this time in his right shoulder. He felt his body go into shock and was having difficulty standing up. One of his family members got Mr. Hatem off of him and carried Mr. Davis to the car.

{¶9} Mr. Davis' brother in-law took him to the hospital, where he received treatment for three stab wounds. At no point in the attack did Mr. Davis have a weapon.

{¶10} Next, Clarence Williams testified he was with Mr. Davis celebrating Mr. Williams' sister's birthday. Mr. Williams' son came to the bar to switch vehicles with Mr. Williams. On his way in, Mr. Williams refused to shake hands with Appellant and Mr. Hatem. Appellant, Mr. Hatem, and several other men followed Mr. Williams' son into the bar and started a verbal altercation. The bar asked everyone to leave. As they left, a fight broke out with Appellant, Mr. Hatem and their colleagues. Mr. Williams was able to get his wife and sister to the vehicle. He then saw Mr. Davis in a head lock, not moving, with blood on his shirt. Mr. Williams removed Mr. Davis from the fight, put Mr. Davis in his vehicle and took him straight to the hospital.

{¶11} Annalesia Milton then testified she is married to Mr. Davis. She testified she was present for the stabbing of her husband. While at the bar, Ms. Milton observed Mr.

Williams' son entering the restaurant and make his way toward them while Appellant and Mr. Hatem yelled at him, making gun gestures. Appellant then brandished a knife. The bouncer removed Appellant, Mr. Hatem, and their group from the bar, then asked Ms. Milton's party to leave as well, saying Appellant will leave them alone. As Ms. Milton's party began to leave, Appellant and Mr. Hatem approached and began arguing. Ms. Milton did not see who threw the first punch but saw her husband stumble and fall. She heard him say he was stabbed and he looked like he was in shock.

{¶12} Next, Taveon Swift testified he was present at Central City Bar on the night of the incident. Mr. Swift was outside when he heard commotion. Mr. Swift then tried to hold people back to stop the fight from escalating. He held back Appellant at one point during the fight.

{¶13} Darion Kiger also testified he was at Central City Bar on the night of the incident. She observed Mr. Davis go limp. Ms. Kiger eventually was able to break up the fight. Afterward she went into the restroom to calm down.

{¶14} Matthew Kendall testified he is the current owner of Central City Bar. He testified that the video Appellee played for the trial court is a fair and accurate copy of the video from that evening.

{¶15} Detective Farmer testified he responded to the incident at Central City Bar. Upon arriving he spoke with Ms. Kiger. She identified Appellant as an individual who was involved in the incident. Detective Farmer then reviewed footage of the event where he observed Appellant placing a knife from his hand into his pocket and removing it to stab Mr. Davis.

{¶16} The defense called McKenzie Crawford to testify over the objection of Appellee. Ms. Crawford testified she is engaged to Mr. Hatem, they live together and have a baby on the way. She testified that during a verbal altercation, Mr. Davis sprinted at Mr. Hatem and started choking him. Ms. Crawford indicated Mr. Hatem was not doing anything, but a woman hit him with a bat. She could not point out on the camera footage where anyone was swinging a bat. She stated Appellant was present, but she did not see what was happening with Appellant.

{¶17} Next, Jud Sherrick testified he went to Central City Bar with Appellant and Mr. Hatem on the night of the incident. Mr. Williams' son then entered the restaurant, said hello to Mr. Hatem, but refused to shake Appellant's hand, slapping it away. On direct examination, Mr. Sherrick testified he did not see the physical altercation. However, on cross-examination, he picked himself out of the camera footage as a man striking Mr. Davis during the confrontation. Mr. Sherrick identified Appellant as lunging at Mr. Davis with a knife.

{¶18} Next, Mr. Hatem testified Mr. Davis and Mr. Williams' son refused to shake hands with Appellant. Mr. Hatem observed that after the bouncer broke them apart the first time, Mr. Davis started running toward his group, and they started fighting. Mr. Hatem claims he was hit by bats and other weapons. Mr. Hatem testified he does not recall telling detectives he is friends with Appellant, and that Appellant had contacted Mr. Hatem before police interviewed him.

{¶19} Breanna Brewer then testified that when the fight broke out, she went to the car to call the police. She did witness women with baseball bats come across the street to strike Mr. Hatem.

{¶20} On February 16, 2022, the jury found Mr. Wilson guilty on the sole count of the indictment.

{¶21} On April 4, 2022, after the preparation of a presentence investigation report, the trial court sentenced Appellant to a term of seven years to ten and half years and a period of eighteen months to three years of post-release control.

**ASSIGNMENTS OF ERROR**

{¶22} Appellant filed a timely notice of appeal. He herein raises the following six Assignments of Error:

{¶23} "I. APPELLANT'S CONVICTION FOR FELONIOUS ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶24} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING TO ADMIT TESTIMONY FROM MATTHEW KENDALL OR MCKENZIE CRAWFORD AS TO THE PRIOR INCIDENT INVOLVING APPELLANT AT THE CENTRAL CITY BAR.

{¶25} "III. THE FAILURE OF APPELLANT'S TRIAL COUNSEL TO AUTHENTICATE DEFENDANT'S EXHIBIT 1, PRIOR TO MOVING THAT IT BE ADMITTED AS AN EXHIBIT, CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF APPELLANT'S RIGHT TO COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

{¶26} "IV. R.C. 2967.171, ALSO KNOWN AS THE "REAGAN TOKES ACT," WHICH ALLOWS THE OHIO DEPARTMENT OF REHABILITATION AND CORRECTION TO UNILATERALLY EXTEND APPELLANT'S SENTENCE, IS UNCONSTITUTIONAL UNDER BOTH THE UNITED STATES CONSTITUTION, ARTS.

I, II, AND III, AND AMENDS. V, VI AND XIV, AND THE OHIO CONSTITUTION, ART. I, §10, AND ART. IV, §§ 1 AND 3(B)(2).

{¶27} "V. THE TRIAL COURT'S SENTENCE OF APPELLANT WAS CONTRARY TO LAW FOR FAILING TO STATE THE CORRECT MAXIMUM PRISON TERM ON THE RECORD AT APPELLANT'S SENTENCING HEARING, IN VIOLATION OF BOTH R.C. 2929.144(B)(1) AND R.C.2929.19(B)(1) and R.C. 2929.19(B)(2)(c)(v).

{¶28} "VI. THE TRIAL COURT'S SENTENCE OF APPELLANT WAS CONTRARY TO LAW FOR FAILING TO NOTIFY APPELLANT AS REQUIRED BY R.C. 2929.19(B)(2)(c)(i) THROUGH (v).

{¶29} For the purpose of judicial economy, we will address Appellant's assignments of error out of order.

**I.**

{¶30} In Appellant's first Assignment of Error, Appellant argues his conviction is against the manifest weight of the evidence. We disagree.

{¶31} When reviewing a weight of the evidence argument, the appellate court functions as the "thirteenth juror" and reviews the entire record, weighing the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts of evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the convictions." *Id.*

**{¶32}** In the case *sub judice*, Appellant was convicted of Felonious Assault in violation of R.C. §2903.11(A)(2), which provides, in pertinent part:

(A) No person shall knowingly do either of the following:

* * *

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

**{¶33}** R.C. §2901.05 states, in pertinent part:

A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not sue the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

**{¶34}** At trial, Appellee presented testimony from the victim, witnesses, and video footage of Mr. Davis, while engaged in a fist fight with Mr. Hatem, was stabbed multiple times in the back and shoulder by Appellant. Appellant provided testimony from Mr. Hatem's fiancé and other members of Appellant's group that they saw women with baseball bats attack Mr. Hatem. No one testified Mr. Davis had or used a weapon of any sort. No video showed these women attacking Mr. Hatem, or Mr. Davis using a weapon.

**{¶35}** It is well-established that the weight of the evidence and credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 231, 2002-Ohio-2126, 767 N.E.2d 216.

**{¶36}** We find that this is not an "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). The trial court neither lost its way nor created a miscarriage of justice in convicting Appellant of Felonious Assault. Appellee presented evidence of his guilt beyond a reasonable doubt.

**{¶37}** Appellant's First Assignment of Error is overruled.

**II.**

**{¶38}** In Appellant's second Assignment of Error, Appellant argues the trial court erred in refusing to admit testimony from Mr. Kendall and Ms. Crawford as to a prior incident involving Appellant at Central City Bar. We disagree.

**{¶39}** "Ordinarily a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cnty.*, 58 Ohio St.3d 269, 271 (1991).

**{¶40}** Though a party is not required to proffer excluded evidence under Evid.R. 103, the substance of the excluded evidence must be apparent to the court from which questions were asked in order to preserve any alleged error for review. *State v. Gilmore*, 28 Ohio St.3d 190, 192, 503 N.E.2d 147, 149 (1986).

**{¶41}** Upon review of the record, we note the following exchange between Appellant's trial counsel, Appellee's trial counsel, and the trial court:

Q: Alright. So you're familiar with the incident that occurred prior to this-why we're here today-a week earlier between Billy [Appellant] and –

MS. GILL: Objection. Your Honor, may we approach?

THE COURT: Please do.

THE FOLLOWING TOOK PLACE AT THE BENCH AND OUT OF THE HEARING OF THE JURY:

MS. GILL: I don't think it's relevant. There was an incident.

MR. KALIS: It's so relevant.

MS GILL: It has nothing to do with this.

MR. KALIS: Yes, it does.

MS. GILL: It's between a person that's not even involved in this incident and one of the Williams [sic] brothers who didn't testify. Nothing was asked of the Williams [sic] brothers, so we would just say it's irrelevant.

MR. KALIS: It's so relevant.

THE COURT: How?

MR. KALIS: Because Billy- because he attacked Billy's friend.

THE COURT: Who?

MR. KALIS: Delvon Williams or Deli. He's going to provide the testimony.

THE COURT: Sustain the objection. I don't find it to be relevant.

MR. KALIS: Your Honor, just let me-

THE COURT: You're not representing them, and they're not charged here.

MR. KALIS: My client tried to make peace about the incident.

THE COURT: Doesn't matter. You can try to make peace with Putin. It doesn't matter.

MR. KALIS: It's relevant.

THE COURT: It's not relevant. I disagree. You put it on the record. Proceed. Thank you.

**{¶42}** The discussion at the bench shows an incident, involving Delvon Williams and a friend of Appellant, occurred at Central City Bar a week prior to Mr. Davis being stabbed. It is not clear from the record if this is a physical altercation, an exchange of words, or something else. Appellant's counsel makes a conclusory statement Appellant tried to make peace. As it is not readily apparent the substance of testimony sought, Appellant was required to seek the introduction of this evidence by proffer or otherwise to properly preserve the issue for appeal. *Harbottle v. Harbottle*, 9th Dist. Summit No. 20897, 2002-Ohio-4859, ¶56. A thorough review of the record shows Appellant failed to do so. Therefore, Appellant has not properly preserved this error for appeal. *Id.*

**{¶43}** Appellant's second Assignment of Error is overruled.

**III.**

**{¶44}** In Appellant's third Assignment of Error, Appellant argues trial counsel was ineffective for failing to authenticate Defense Exhibit 1. We disagree.

**{¶45}** Our standard of review is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; whether counsel's performance

fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.*

{¶46} Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267. In addition, the United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697, 104 S.Ct. 2052. Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

{¶47} Appellant argues the trial counsel erred in showing Defense Exhibit 1, a video of the incident to the jury, but did not enter into evidence. Appellant's appellate counsel also has not submitted any video for review.

{¶48} The decision not to submit the video into evidence falls within the broad discretion of trial strategy. It is reasonable trial strategy not to provide the jury a second angle to repeatedly view Appellant's attack and is not ineffective assistance of counsel. Therefore, Appellant's argument is unpersuasive and does not show counsel's performance fell below an objective standard of reasonable representation.

**{¶49}** Appellant's third Assignment of Error is overruled.

**V.**

**{¶50}** In Appellant's fifth Assignment of Error, Appellant argues his sentence is contrary to law for failing to state the correct maximum prison term on the record. We agree.

**{¶51}** R.C. §2929.144(B) states, in pertinent part:

The court imposing a prison term on an offender under division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code for a qualifying felony of the first or second degree shall determine the maximum prison term that is part of the sentence in accordance with the following:

(1)     If the offender is being sentenced for one felony and the felony is a qualifying felony of the first or second degree, the maximum prison term shall be equal to the minimum term imposed on the offender under division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code plus fifty per cent of that term.

**{¶52}** R.C. §2929.19(B)(2)(c) provides, in pertinent part:

If the prison term is a non-life felony indefinite prison term, notify the offender of all of the following:

* * *

(v) that if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term.

**{¶53}** The trial court informed defendant his sentence would be a minimum prison term of seven years and a maximum prison term of nine years. As this sentence was contrary to R.C. §2929.144(B), the trial court failed to notify Appellant at the sentencing hearing of his correct sentence. Therefore, we find that the sentence is contrary to law.

**{¶54}** Appellant's fifth Assignment of Error is sustained.

### IV., VI.

**{¶55}** Due to our disposition in Appellant's fifth Assignment of Error, we find Assignments of Error four and six are rendered moot

**{¶56}** For the foregoing reasons, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed in part, reversed in part, and remanded.


By: Wise, J.

Gwin, P. J., and

Hoffman, J., concur.


_____
HON. JOHN W. WISE


_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN

JWW/br  0206